315 S.E.2d 829 (1984)
Joan S. MAHAN, et al., etc.
v.
NATIONAL CONSERVATIVE POLITICAL ACTION COMMITTEE.
Record No. 811386.
Supreme Court of Virginia.
April 27, 1984.
*830 John A. Gibney, Jr., Asst. Atty. Gen. (Gerald L. Baliles, Atty. Gen., William G. Broaddus, Chief Deputy Atty. Gen., on briefs), for appellants.
Robert R. Sparks, Jr., McLean (J. Curtis Herge, Sedam & Herge, P.C., McLean, on brief), for appellee.
Present CARRICO, C.J., COCHRAN, COMPTON, STEPHENSON, RUSSELL, and THOMAS, JJ., and GORDON, Retired Justice.
RUSSELL, Justice.
The members of the State Board of Elections[1] appeal a declaratory judgment which held unconstitutional a statute defining and restricting the entities entitled to obtain copies of the Board's computerized statewide list of registered voters.

FACTS
Since 1973,[2] the Board has been required by Code § 24.1-23(1) to maintain a statewide central roster of registered voters, which lists all qualified voters in the Commonwealth by city or county and by precinct. Code § 24.1-23(4) requires the Board, prior to any election, to furnish the general registrar of each city and county with the list of qualified voters in each precinct, which then constitutes the official local list of qualified voters for the forthcoming election. The local general registrar maintains the lists on file and keeps them up to date pursuant to Code § 24.1-46. They are available for public inspection and copying in the 136 local general registrar's offices throughout the Commonwealth.
Code § 24.1-23(8), however, provides for limited dissemination of the statewide central roster maintained by the Board. That section makes it the Board's duty to furnish precinct lists, at a reasonable price, to the following recipients only, and for the specified purposes only:
*831 1. State and Federal courts for jury selection purposes;
2. Candidates for election or political party nomination, to further their candidacy;
3. Political party committees or officials thereof, for political purposes only;
4. Incumbent officeholders, to report to their constituents; and
5. Nonprofit organizations which promote voter participation and registration, for that purpose only.
Authorized recipients are entitled to precinct lists in computer printout form, or in the form of magnetic tape to be used in computer equipment, as they may request. Any person receiving such a list is required to make oath:
1. That he is an authorized recipient under the statute;
2. That the list will be used only for the statutory purpose; and
3. That he will not permit any unauthorized person to use or copy the list.
National Conservative Political Action Committee (NCPAC) is a non-profit District of Columbia corporation qualified to do business in Virginia. It was organized in 1975 for the purpose of influencing federal, state, and local elections. It makes financial contributions to political candidates and campaign committees. It also makes independent expenditures to support or oppose candidates and political issues. It relies heavily on direct mailings to voters as well as on telephone calls and media advertising. It has no candidates of its own, and is neither a "political party," a "political party committee," nor a "nonprofit organization which promotes voter participation and registration" within the purview of Code § 24.1-23(8).
NCPAC filed a statement of organization with the Board, pursuant to Code § 24.1-254.1, as a "committee other than a candidate's committee or political party committee" for the years 1977 and 1978. It refers to itself as an "independent political committee, as defined in 2 U.S.C. § 431(4)." It concedes that it does not fit within any of the statutory categories of authorized recipients of computerized central voter's lists under Code § 24.1-23(8).
On July 11, 1978, John T. Dolan, Chairman of NCPAC, wrote to Joan S. Mahan, Secretary of the Board, requesting a copy of the computer tape of all registered voters in the Commonwealth. The letter stated that NCPAC wished to use the tape solely "for the purposes [sic] of making independent expenditures in behalf of candidates," and assured the Board that the use of the tape would be "limited to purely political purposes and not for commercial exploitation." Secretary Mahan responded for the Board by letter of July 17, 1978, pointing out that NCPAC did not fit within any one of the five categories of entities authorized by Code § 24.1-23(8) to receive copies of the central list, denying NCPAC's request, and stating that the Board had no discretion in the matter.
NCPAC lawfully could obtain the data which the Board denied to it by sending agents to each of the 136 local registrar's offices, copying the lists maintained there, and then collating and transcribing the data into form suitable for use in computer equipment. The trial court found from the evidence that the cost and effort of doing this would be prohibitive, that NCPAC had refrained from activity in several past political campaigns in Virginia because of this factor, and that it would be required to refrain therefrom in the future if the Board's ruling stands. On the other hand, the court found that NCPAC intended to make independent expenditures in support of candidates in federal and state elections in Virginia if given access to the Board's central list at reasonable cost.
NCPAC may also obtain some of the same information from commercially available lists of contributors to various causes, and it is always free to reach the public at large through advertising in public media. The trial court found, however, that such methods are an inadequate substitute for the more effective targeting of registered *832 voters which NCPAC could accomplish by direct mail if it had access to the Board's list.

PROCEEDINGS
NCPAC filed a motion for declaratory judgment against the Board, contending that Code § 24.1-23(8) is unconstitutional as applied to it. Most of the facts were stipulated, but additional evidence was received in an ore tenus hearing. In a written opinion, the court held that Code § 24.1-23(8) was unconstitutional and invalid as applied to NCPAC because it abridged protected free speech in a manner unjustified by a compelling state interest, and because it unlawfully discriminated against NCPAC by treating it differently from other political organizations similarly situated. The court entered a declaratory judgment which directed the Board to furnish NCPAC with copies of the computer tape of the central roster of registered voters on the same basis as political parties and candidates.

STANDARDS OF REVIEW
It cannot be said that the statutory scheme prohibits NCPAC from addressing Virginia's registered voters on political issues, because the names and addresses of the voters are available to it in the local registrar's offices. There are also, as noted above, other means than direct mail available for communication with the electorate. The net effect of Code § 24.1-23(8), however, is to extend to its enumerated classes of authorized recipients a relatively facile and inexpensive means of identifying voters, which is denied to other classes who may also wish to influence elections. Among the many voices clamoring for attention in the political arena, the statute grants an advantage of time and money to some which it denies to others. When classifications of this kind affect fundamental constitutional rights, they are subject to strict judicial scrutiny.
This Court has been reluctant to declare legislative acts unconstitutional, and will do so only when the infirmity is clear, palpable, and practically free from doubt. We accord every legislative act a presumption of constitutionality. Blue Cross v. Commonwealth, 221 Va. 349, 358, 269 S.E.2d 827, 832 (1980); Green v. County Board, 193 Va. 284, 287, 68 S.E.2d 516, 518 (1952). Accordingly, we will uphold statutory classifications if they bear some rational relationship to a legitimate legislative interest or purpose. See Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). We have said that a classification ordinarily will be upheld "if any state of facts can be reasonably conceived that would support it." Blue Cross, 221 Va. at 363, 269 S.E.2d at 836; accord I.D.A. v. La France Cleaners, 216 Va. 277, 282, 217 S.E.2d 879, 883 (1975); Mandell v. Haddon, 202 Va. 979, 989, 121 S.E.2d 516, 524 (1961). But where the statute creates a "suspect classification" (e.g. race, sex, or religion) or where it affects a fundamental constitutional right, the presumption of constitutionality fades, and the "strict scrutiny" test, rather than the more relaxed "rational relationship" test, applies. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
Laws that affect fundamental constitutional rights, as we have seen, are subjected to strict judicial scrutiny. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). In order to satisfy such an examination, the law must be a necessary element for achieving a compelling governmental interest. Greenberg v. Bolger, 497 F.Supp. 756, 778 (E.D.N.Y.1980). To be viewed as necessary, the classification or infringement must be the least burdensome means available for attaining the governmental objective in question. Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972).

FREEDOM OF SPEECH
Not all speech is protected by the First Amendment to the Federal Constitution and article I, section 12 of the Virginia *833 Constitution.[3]See Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). But there can be no doubt that discussion of public issues and debate on the qualifications of candidates for public office are integral to the operation of our system of government and are entitled to the broadest protection the First Amendment can afford. Buckley v. Valeo, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976); Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957). Indeed, the Supreme Court has held that political activity of this kind invokes the "fullest and most urgent application" of the First Amendment. Monitor Patriot Co. v. Roy, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971). Thus, it is evident that Code § 24.1-23(8) has an impact upon the exercise of fundamental rights guaranteed to all citizens under both the Federal and Virginia Constitutions.
The Federal Election Campaign Act of 1971, Pub.L. No. 92-225, 86 Stat. 3 (codified as amended at 2 U.S.C. §§ 431-455 (1974)), imposed strict limitations on campaign contributions to candidates for public office and on independent expenditures by individuals and groups in furtherance of political campaigns. In 1976, the Supreme Court, in Buckley v. Valeo, supra, held unconstitutional those parts of the Campaign Act which limited the independent expenditures which individuals and groups might make in furtherance of political causes. Noting that the purpose of the Congress in enacting the limitations on independent expenditures had been a "governmental interest in equalizing the relative ability of individuals and groups to influence the outcome of elections," the Court held:
[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed "to secure `the widest possible dissemination of information from diverse and antagonistic sources,'" and "`to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"
424 U.S. at 48-49, 96 S.Ct. at 648-49 (citations omitted).

EQUAL PROTECTION
In the wake of Buckley, political action committees of every variety proliferated across the electoral landscape, seeking to influence the voters from countless points of view. NCPAC, like many other groups of its general kind, did not exist in 1970, when the General Assembly adopted Code § 24.1-23(8). NCPAC, therefore, makes no contention that the legislature intended to discriminate against it or others similarly situated, but rather argues that the legislative intent was to include within the statutory benefits all who were then engaged in legitimate political persuasion, and to exclude those who might use the voters' list for commercial purposes or improper harassment of voters. Both parties here concede that the latter concern is a valid and compelling governmental interest.
Indeed, NCPAC argues that if it and others of its general kind had been extant and active in Virginia in 1970, the General Assembly probably would have included such entities within the categories of those *834 authorized to receive copies of the voters' list, because their activities are indistinguishable from those of the political parties, candidates, and incumbents who were included. Accordingly, no facial attack is made upon Code § 24.1-23(8). Rather, NCPAC says that the statute is invalid, as applied to it, on Equal Protection grounds.
Consistent with its Equal Protection claim, NCPAC concedes that the legislature has no duty to make the central voters' list available to anyone and is free to terminate its availability at any time, provided all would-be recipients are treated alike. It further concedes that the legislature has the power to restrict the availability of the list to those who would use it only for bona fide political or official purposes, that being a valid and compelling governmental interest. NCPAC argues only that since the legislature has seen fit to make the central voters' list available to some advocates of political causes and candidates, it may not, within the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution,[4] deny it to others. NCPAC contends that in order for the statute to be constitutional, it must be construed so as to make the central voters' list equally available, without discrimination, to all persons and groups who intend to use it for the legislatively-ordained political and official purposes, and who will subscribe to the requisite oath and pay the requisite fee. We agree with this analysis.
Under the applicable standards of review discussed above, a statutory classification affecting a fundamental constitutional right may survive the "strict scrutiny" test only if its proponent can demonstrate that it achieves a compelling governmental interest and that it does so by the least burdensome means available for attaining the governmental objective in question. The Board's defense of the limitations of Code § 24.1-23(8), as they apply to NCPAC, fails to make such a case.
The Board argues that the statute does not affect fundamental constitutional rights and, therefore, the Board is not required to show a "compelling state interest" in order to satisfy the requirements of the Equal Protection Clause. Rather, it argues, it need only show a rational relationship to a legitimate state interest. For the reasons stated above, we disagree. Even if the latter standard were appropriate, the Board's only asserted legitimate state interest is that if NCPAC and other similar groups were furnished copies of the central voters' list, the registration of voters might be "chilled" because prospective registrants might fear invasion of their privacy by frequent contacts from those who had access to the list. This supposition is specious. The names and addresses of the voters are now freely available to any person who wishes to copy them in the local registrar's offices, even for commercial purposes. Consequently, no compromise of security would occur if the central list were furnished to additional users.
Moreover, since the General Assembly has determined that the central list should be available to those who wish to influence elections, it may no more regulate the quantity of users of the list, or the quantity of contacts to which the voters are subjected by them, than it may discriminate among the persons and groups who may make such contacts. Buckley, 424 U.S. at 17-19, 96 S.Ct. at 633-35.
We further agree with the trial court's ruling that the statutory scheme is not the least burdensome alternative which could be fashioned to achieve the legislative interest in protecting the privacy of voters *835 from unwarranted intrusion. The present statute's restriction of the use of the list to political and official purposes, coupled with the requirements of the statutory oath, are steps in that direction. As the trial court noted, precautionary administrative measures, short of total exclusion, adequately might serve the state's interest.
Accordingly, we hold that Code § 24.1-23(8) is unconstitutional as applied to NCPAC, and will affirm the declaratory judgment entered below.
Affirmed.
NOTES
[1] The defendants below, and appellants here, are Joan S. Mahan, Secretary and member, and Wayne Lustig and Willis M. Anderson, members of the State Board of Elections.
[2] The statutory scheme was enacted in 1970. Acts 1970, c. 462. The Board, however, was given until October 1, 1973 to set up the central roster.
[3] The First Amendment provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.
Va. Const. art. I, § 12 provides:
That the freedoms of speech and of the press are among the great bulwarks of liberty; and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the people peaceably to assemble, and to petition the government for the redress of grievances.
[4] The pertinent language of the Fourteenth Amendment is: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const. amend. XIV, § 1). Where possible, we will rely upon our own Constitution rather than that of the United States. Schilling v. Bedford Co. Hospital, 225 Va. 539, 543 n. 2, 303 S.E.2d 905, 907 n. 2 (1983). Our Constitution, however, guarantees only that "the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex or national origin shall not be abridged ...." (Va. Const. art. I, § 11). Because it does not extend to discrimination having an impact upon freedom of speech, our equal protection analysis must be based upon the requirements of the Federal Constitution.