306

# CIRCUIT COURT OF THE CITY OF NORFOLK

Anthony L. Burfoot

     v.

May4thCounts.com
and Disgruntled Citizen

April 22, 2010

Case No. (Civil) CL10-2735

BY JUDGE CHARLES E. POSTON

     Today, the Court *sua sponte* vacates the Order of April 21, 2010. In that Order, the Court granted plaintiff's Motion for Entry of a Temporary Injunction prohibiting the defendants from using a website entitled "May4thCounts.com" and ordered the removal of the website from the internet. The Court also directed the plaintiff to effect service of process on the defendants and continued the action for July 7, 2010, for further proceedings. Under the Injunction Order's terms, the action will be advanced on the docket upon the motion of any defendant.

     According to the Complaint, the website "May4thCounts.com" publishes "certain information which is slanderous and libelous with regard to City Councilman." It is also alleged that this information "relate[s] directly to the powers and responsibilities of the Councilman." Among the website's publications concerning the plaintiff are the following:

     1. "Anthony Burfoot has … told many small business owners in Norfolk that, in order to do business within the City, he has to have a piece and be involved."

2. "[Anthony Burfoot] spearheaded the close of various businesses and venues such as Shooters, Bar Norfolk, Indra, Have a Nice Day Café, and Posh Dolce, all of which are in direct competition of [sic] the soon to be opened, illegally City Council sanctioned nightclub Palace on Plume which he is rumored to have an under-the-table ownership stake in."

3. "[Anthony Burfoot] pushed for the paid appointment of his campaign manager Curt Anderson to the Norfolk Redevelopment Housing Authority."

It cannot be disputed that the Plaintiff is running for reelection to the City Council in the election scheduled for May 4, 2010. The website's information is clearly designed to dissuade voters from supporting the Plaintiff's reelection.

The website was created on April 15, 2010, and its domain is hosted by GoDaddy.com. The website's registrant is listed as "Disgruntled Citizen" whose address is listed as "200 E. Plume Street, Norfolk, Virginia." This address is that of a downtown building formerly occupied by a bank. According to the Complaint, this address is the future home of an entertainment venue to be named "The Palace." Significantly, the website alleges that the Plaintiff "is rumored to have an under-the-table ownership stake" in that establishment. Clearly, the website's registrant has taken pains to preserve his or her anonymity.

The Plaintiff asserts that he will suffer irreparable harm if the website is permitted to continue its operation. Upon these representations, the Court granted the temporary injunction. Upon further consideration, the Court concludes that the temporary injunction should not have been granted.

The Internet is a means of communication totally foreign to the imagination of the Founding Fathers. Nevertheless, they recognized the necessity of a free press for the preservation of democracy. Thus, we find in Article I, § 12, of the Virginia Constitution this statement:

> That freedom of speech and of the press are among the great bulwarks of liberty and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publicize his sentiments on all subjects, being responsible for the abuse of that right. . . .

In our world, the Internet, just as radio and television, are subsumed in the word "press" as used in the Constitution.

The gravamen of the Plaintiff's desire for an immediate injunction appeared from counsel's argument to be the anonymous source of the alleged defamatory · publication. His distaste for the unsigned, unacknowledged publication is understandable, but does not justify the *ex parte* closing of the website. Indeed, even after a hearing on the merits, such a closure may not be justified. The closure is, in effect, a prior restraint on publication, since it not only makes the information already on the site unavailable but also forecloses upon *future* publication on the site.

The plaintiff's obvious remedy is an action against the author and publisher for defamation. Perhaps the availability of this remedy is the reason those responsible for the website have taken steps to remain faceless.

Anonymous political writings are not foreign to the American political experience. *The Federalist Papers* were published anonymously, although today we know the identities of the authors. In opposing a proposed restraint on free speech during his administration, President Woodrow Wilson repeatedly said:

> I have always been among those who believe that the greatest
> freedom of speech was the greatest safety, because, if a man
> is a fool, the best thing to do is to encourage him to advertise
> the fact by speaking.

Historically, our Commonwealth has placed a great premium on the ability of the citizens to make reasonable decisions about public matters.

The Supreme Court of Virginia has held that "discussion of public issues and debate on the qualifications of candidates for public office are integral to the operation of our system of government and are entitled to the broadest protection the First Amendment can afford." *Mahan v. National Conservative Political Action Committee*, 227 Va. 330, 336-37 (1984) (citing *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); *Roth v. United States*, 354 U.S. 476, 484 (1957)).

Further, speech concerning the official conduct of public figures is especially protected, and such figures seeking judgment in a defamation action must prove, in addition to an actionable statement and publication, malicious intent. *Jordan v. Kollman*, 269 Va. 569, 575-77 (2005); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). This malicious intent is proved through clear and convincing evidence either that the defendant recognized his statement as false or that he entertained serious doubt as to the truth of his statement.

*Jordan v. Kollman*, 269 Va. 569, 577 (2005) (citing *Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485, 511, n. 30, 80 L. Ed. 2d 502, 104 S. Ct. 1949 (1984)). The only evidence before the Court that could speak to the intent of the publishing defendant is the content of May4thCounts.com. The Court is unable to find, without additional information, actual malice in this publication. The balance, then, between the freedom of expression guaranteed by our Constitution and holding one responsible for abuse of that freedom is found not by prohibiting the expression *ex parte*, but by testing its use in a judicial proceeding in which all parties have the opportunity to be heard.

Consequently, the Court's Order of April 21, 2010, will be vacated. This action is continued to July 7, 2010, at 9:30 a.m. for further proceedings.