Present: All the Justices

CHARLOTTE W. TRIBLE

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v. Record No. 941302                                  June 9, 1995

R. TYLER BLAND, III, ET AL.


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
Samuel Taylor Powell, III, Judge


In this land use controversy, in which a municipality has permitted the operation of a group home in a residential district, the appeal turns upon the meaning of Code § 15.1-486.3 enacted in 1990. Acts 1990, ch. 814.

At the time of this dispute, § 15.1-486.3 provided:
"**Group homes of eight or less single-family residence.**-- For the purposes of locally adopted zoning ordinances, a residential facility in which no more than eight mentally ill, mentally retarded, or developmentally disabled persons reside, with one or more resident counselors or other staff persons, shall be considered for all purposes residential occupancy by a single family. For the purposes of this section, mental illness and developmental disability shall not include current illegal use of or addiction to a controlled substance as defined in § 54.1-3401. No conditions more restrictive than those imposed on residences occupied by persons related by blood, marriage, or adoption shall be imposed on such facility. A residential facility shall be deemed to be any group home or other residential facility for which the Department of Mental Health, Mental Retardation and Substance Abuse Services is the licensing authority pursuant to this Code."

The statute was amended in 1993, but that change does not affect this controversy. See Acts 1993, ch. 373.

At the time of this dispute, a locally adopted zoning ordinance was effective in the Town of West Point. Section 70-24 of the ordinance defines "group home" as:

"A residential facility, otherwise meeting the definition of a single family detached dwelling, in which not more than eight physically handicapped, mentally ill, mentally retarded or other developmentally disabled persons, not related by blood or marriage, reside on a long-term basis, with one or more resident counselors or staff persons, the purpose of such facility being to provide to its occupants the benefits of normal residential surroundings to achieve optimal assimilation into the community. The term `group home' shall include family care homes or foster homes, and shall not include residential facilities, the principal purpose of which is to provide emergency shelter, diagnostic or treatment services on a short-term residential basis."

In December 1992, the Town, through its zoning administrator, issued a Certificate of Use and Occupancy to the owner of a single-family detached dwelling for use as a "Group Home." The certificate stated, under "Special Conditions," "Self-Care Only / No More Than 21 Residents."

In August 1993, appellant Charlotte W. Trible filed a bill of complaint for declaratory judgment and injunction naming as defendants the Town's mayor, R. Tyler Bland, III, the Town's council, the Town's manager and zoning administrator, members of the Town's board of zoning appeals, and the Town's attorney (collectively, the Town). The plaintiff lives in a single-family residence adjoining the group home. Noting that the certificate of use and occupancy was issued without notice to the property owners adjacent to the group home, the plaintiff alleged that she disputed the granting of the certificate in July 1993, when she learned of its issuance, and sought a hearing before the board of zoning appeals. She asserted that she was denied a hearing

because the board, upon advice of the Town's attorney, ruled that her request for review of the zoning administrator's decision was time-barred.

The plaintiff further alleged that more than eight persons reside in the group home, in violation of Code § 15.1-486.3 and Town ordinance § 70-24. She alleged the issuance of the permit, and subsequent actions by Town officials in allowing 21 partially physically and developmentally disabled individuals to reside in the adjoining property, violated various other provisions of the State statutes and Town ordinances.

The plaintiff sought a judgment declaring the Town ordinance invalid as it pertains to group homes because, she alleged, it does not comply with the authority granted to localities by the General Assembly. She also sought an injunction preventing the enforcement of the ordinance and operation of the home, and asked that the Town be required to rescind the certificate of occupancy.

The Town filed a demurrer which, following argument of counsel, the trial court sustained. In a letter opinion, the court noted that the facts were undisputed. The court pointed out that the Town's zoning ordinance permitted both the plaintiff's dwelling and the group home to be located within the R-3 zoning district.

The trial court decided that the "limitation in existence at the time of the issuance of the certificate of occupancy limited

- 3 -

the localities' authority to `zone out' group homes described in § 15.1-486.3 but did not limit the localities' authority to define a group home."  The court ruled that a "more expansive definition of a group home as provided in § 70-24 is permitted" under the applicable state statute and is "not limited by § 15.1-486.3 and accordingly § 70-24 is not in violation of the Dillon rule."

Consequently, the trial court held that "it was appropriate for the zoning administrator to issue the certificate of occupancy for the group home."  The court also decided that the board of zoning appeals properly declined to hear the plaintiff's appeal because it was time-barred under Code § 15.1-496.1 (any person aggrieved by decision of zoning administrator may appeal to board of zoning appeals within 30 days after decision). Although sustaining the demurrer, the trial court granted the plaintiff leave to amend her pleadings to raise certain factual issues and to "proceed to trial if she be so advised."

The plaintiff elected not to amend.  We awarded her this appeal on limited grounds from the trial court's May 1994 order dismissing the bill of complaint.

The dispositive question is whether Code § 15.1-486.3 limits the zoning power of local authorities to allow group homes in residential districts, as the plaintiff contends, or whether the statute limits such power of localities to exclude group homes from residential districts, as the Town contends.  We agree with

the Town's contention, and will affirm.[*]

The General Assembly has granted localities broad authority to adopt zoning ordinances pursuant to Code § 15.1-486. As pertinent here, the statute provides that a municipality may, by ordinance, classify the territory under its jurisdiction into districts and, in each district, may determine the utilization of premises for residential uses. Code § 15.1-486(a). Of course, as the plaintiff points out, a municipality's ordinances must not be inconsistent with the laws of the Commonwealth. Code § 1-13.17.

The crux of the plaintiff's argument is that Code § 15.1-486.3 gives localities the power to allow a specific type of group home in residential districts, restricting the number of occupants to a maximum of eight persons. But, the statute deals with "family composition rules," which "are an essential component of single-family residential use restrictions." City of Edmonds v. Oxford House, Inc., No. 94-23, 1995 U.S. LEXIS 3183, at *14 (U.S. May 15, 1995), decided after the present case was argued on appeal. "Maximum occupancy restrictions, in

---

[*]We are not presented with the question whether the Town has violated the state statute or its own ordinance by allowing more than eight developmentally disabled persons to reside in the group home in question. As we have said, the trial court ruled that the plaintiff's appeal from the zoning administrator's decision to permit occupancy by 21 persons in the home was time-barred. This ruling attacking the violation of the statute and ordinance was not the subject of any assignment of error. This appellate debate deals solely with the meaning of the state statute.

contradistinction, cap the number of occupants per dwelling, typically in relation to available floor space or the number and type of rooms . . . . Their purpose is to protect health and safety by preventing dwelling overcrowding."  Id.

Code § 15.1-486.3 is a classic example of "a use restriction and complementing family composition rule," id. at *19, and is not a maximum occupancy restriction.  The statutory provisions "do not cap the number of people who may live in a dwelling." Id.  Rather, the statute plainly provides that a residential facility housing no more than eight persons with the specified disabilities, plus staff persons, shall be treated for zoning purposes the same as residences occupied by a typical family composed of persons related by blood, marriage, or adoption.  As the Town points out, nothing in the statute prohibits a locality from being more permissive in its treatment of group homes than is required by the statutory language; localities are merely prohibited from being more restrictive.

In sum, Code § 15.1-486.3 only provides that a group home in which eight or less "mentally ill, mentally retarded, or developmentally disabled persons reside" that has been licensed by the Department of Mental Health, Mental Retardation and Substance Abuse Services may not be excluded from residential districts by local zoning ordinances.  The obvious purpose is to protect group homes that meet these requirements.

The Town has not violated the statute by allowing a group

home, with a permit from the Department of Social Services (as shown by the record) and more than eight disabled persons, to be operated in a residential district. The Town simply has been more permissive than the state statute in its definition of the type of group home permitted in such a district.

Consequently, the judgment of the trial court will be

*Affirmed*.

CHIEF JUSTICE CARRICO, dissenting.

I dissent. I think <u>City of Edmonds v. Oxford House, Inc.</u>, ___ U.S. ___, ___ S.Ct. ___, (1995), upon which the majority places so much reliance, is inapposite. The sole question the Supreme Court decided in <u>Edmonds</u> was whether the definition of "family" in a local zoning code qualified for exemption from the anti-discrimination provisions of the federal Fair Housing Act (FHA). No question about the applicability of the FHA, or any other federal question, is presented in the case now before this Court.

Rather, the only question presented here concerns the interpretation of a state statute, Code § 15.1-486.3, and § 70-24 of the zoning ordinance of the Town of West Point. I think, as the majority holds, that the effect of § 15.1-486.3 is to limit the power of a locality to exclude from a residential district a group home that houses "mentally ill, mentally retarded, or developmentally disabled persons" and that has been licensed by the Department of Mental Health, Mental Retardation and Substance

Abuse Services.

I also think, however, that, in unmistakable terms, both § 15.1‑486.3 of the Code and § 70‑24 of the Town's zoning ordinance limit to eight the number of mentally ill, mentally retarded, or developmentally disabled persons who may reside in a group home located in a residential district.  Accordingly, contrary to the holding of the majority, I would find that the Town has violated the statute by allowing a group home, with more than eight disabled persons, to be operated in a residential district.