Present:  All the Justices

REUBEN L. BLANTON, ET AL.
                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 000277                January 12, 2001

AMELIA COUNTY, ET AL.

            FROM THE CIRCUIT COURT OF AMELIA COUNTY
                    Thomas V. Warren, Judge

                              I.

     In this appeal, we consider whether ordinances enacted by

a county's board of supervisors contravene Code § 1-13.17,

which prohibits the enactment of ordinances that are

inconsistent with the laws of this Commonwealth.

                              II.

                              A.

     Appellants, Reuben L. Blanton, L. L. Covington, Lois N.

Hall, David L. Foley, Jack E. Bulls, Grub Hill Farm, Inc.,

Hoot Owl Hollow Farms, and Little Patrick Farms, Inc.,

(collectively, the plaintiffs), filed a bill of complaint for

declaratory judgment and injunctive relief against Amelia

County, the Board of Supervisors of Amelia County, and Philip

T. Vannoorbeeck, who serves as the County Administrator and

Zoning Administrator (collectively, the County).  The

litigants entered into the following stipulations of fact

which are relevant to our disposition of this appeal.

                              B.

Blanton, Covington, Hall, Foley, and Bulls are residents of Amelia County who engage in farming activities. Grub Hill Farm, Inc., a Virginia corporation, Little Patrick Farms, Inc., a Virginia corporation, and Hoot Owl Hollow Farms, a Virginia partnership, are business entities which own and lease farmland in Amelia County.

The State Health Commissioner has issued "biosolids use/treatment works operation permits" which authorize Blanton, Bulls, Foley, and Hoot Owl Hollow Farms to use biosolids upon their respective farmlands. The remaining plaintiffs, with the exception of Grub Hill Farm, have submitted applications to the State Health Commissioner for permits which would authorize them to apply biosolids on farmlands that they own or lease. Additionally, Blanton has an application pending before the State Health Commissioner which, if granted, would permit him to use biosolids on additional farmland owned by him. Plaintiff Grub Hill Farm intends to file an application for the land use of biosolids to its farmland "in the near future."[*]

_____

[*]    We have concerns whether all the plaintiffs have standing to challenge the County's ordinances. See generally Mosher Steel v. Teig, 229 Va. 95, 100-01, 327 S.E.2d 87, 91-92 (1985); Cupp v. Board of Supervisors, 227 Va. 580, 589-90, 318 S.E.2d 407, 411-12 (1984); Fairfax County v. Southland Corp., 224 Va. 514, 519-21, 297 S.E.2d 718, 720-21 (1982). However, since it is clear from the record that plaintiffs Blanton, Foley, Bulls, and Hoot Owl Hollow Farms do have standing to

2

Biosolids, which are a type of sewage sludge, are delivered and applied free of charge by authorized applicators to farmland which has been approved by the State Health Commissioner for such application. Farmers who have received permits to use biosolids have reduced their expenditures for fertilizer and lime.

In 1999, the Board of Supervisors of the County of Amelia had numerous discussions and public meetings pertaining to the use of biosolids. After conducting public hearings, the Board of Supervisors adopted two ordinances that banned the use of biosolids in Amelia County. One ordinance is entitled, "A Zoning Ordinance Banning the Placement of Biosolids in Any Zoning District." The Board of Supervisors adopted this zoning ordinance because the Board determined that

> "the spreading, placement or disposal of human waste sludge or industrial sludge on land in Amelia County . . . constitute[s] a nuisance and further . . . constitute[s] a hazard to the health, safety and general welfare of the inhabitants of said county and . . . constitute[s] a danger of pollution of the waters of the county. The Board finds that public necessity, convenience, general welfare and good zoning practices warrant the adoption of this Ordinance banning the land application of biosolids."

The other ordinance is entitled, "An Ordinance Banning the Placement of Biosolids on Any Land in the County." When

challenge the County's ordinances, we need not determine whether the remaining plaintiffs have the requisite standing.

3

adopting this ordinance, the Board of Supervisors, exercising its police powers, concluded that

> "the spreading, placement or disposal of human waste sludge or industrial sludge on land in Amelia County . . . constitute[s] a nuisance and further . . . constitute[s] a hazard to the health, safety and general welfare of the inhabitants of said county and . . . constitute[s] a danger of pollution of the waters of the county."

The ordinances became effective upon adoption on March 17, 1999, and are currently in effect. The ordinances prohibit Blanton, Bulls, Foley, or Hoot Owl Hollow Farms from using biosolids on their farmland even though they have valid permits authorizing such use.

## C.

After the litigants filed the above-referenced stipulations in the circuit court, the litigants filed motions for summary judgment. The plaintiffs asked that the court enter summary judgment on their behalf and asserted, among other things, that the County's ordinances are inconsistent with state law in violation of Code § 1-13.17. In their motion for summary judgment, the defendants argued that as a matter of law the County has "the right and authority to ban the land application of sewage sludge." The circuit court granted the County's motion and entered a judgment on behalf of the County. The plaintiffs appeal.

III.

A.

Code § 1-13.17 states:

> "When the council or authorities of any city or town, or any corporation, board, or number of persons, are authorized to make ordinances, bylaws, rules, regulations or orders, it shall be understood that the same must not be inconsistent with the Constitution and laws of the United States or of this Commonwealth."

Code § 32.1-164.5 governs the land application, marketing, and distribution of sewage sludge. This statute states in relevant part:

> "A. No person shall contract or propose to contract, with the owner of a sewage treatment works, to land apply, market or distribute sewage sludge in the Commonwealth, nor shall any person land apply, market or distribute sewage sludge in the Commonwealth without a current Virginia Pollution Abatement Permit from the State Water Control Board or a current permit from the State Health Commissioner authorizing land application, marketing or distribution of sewage sludge and specifying the location or locations, and the terms and conditions of such land application, marketing or distribution.
>
> "B. The Board of Health, with the assistance of the Departments of Environmental Quality and Conservation and Recreation, shall promulgate regulations to ensure that (i) sewage sludge permitted for land application, marketing or distribution is properly treated or stabilized, (ii) land application, marketing and distribution of sewage sludge is performed in a manner that will protect public health and the environment, and (iii) the escape, flow or discharge of sewage sludge into state waters, in a manner that would cause pollution of state waters, as those terms are defined in § 62.1-44.3, will be prevented.

5

"C.  Regulations promulgated by the Board of Health, with the assistance of the Departments of Environmental Quality and Conservation and Recreation pursuant to subsection B of this section, shall include:

"1.  Requirements and procedures for the issuance and amendment of permits as required by this section;

"2.  Procedures for amending land application permits to include additional application sites and sewage sludge types;

"3.  Standards for treatment or stabilization of sewage sludge prior to land application, marketing or distribution;

"4.  Requirements for determining the suitability of land application sites and facilities used in land application, marketing or distribution of sewage sludge;

"5.  Required procedures for land application, marketing and distribution of sewage sludge;

"6.  Requirements for sampling, analysis, record keeping and reporting in connection with land application, marketing and distribution of sewage sludge;

"7.  Provisions for notification of local governing bodies to ensure compliance with §§ 32.1-164.2 and 62.1-44.15:3;

"8.  Conditions where a nutrient management plan approved by the Department of Conservation and Recreation may be required.

"D.  The Board of Health shall adopt regulations in accordance with this section not later than October 1, 1994.  The Board of Health may adopt, as final, proposed regulations that were the subject of public notice and for which one or more public hearings or informational meetings were held in accordance with the Administrative Process Act (§ 9-6.14:1 et seq.) after July 1, 1993, and prior to September 30, 1994.

"E.  The Board may adopt regulations prescribing a reasonable fee not to exceed $2,500 to be charged for the direct and indirect costs associated with the processing of an application to issue, reissue, amend or modify any permit to land apply, distribute or market sewage sludge pursuant to this section.

. . . .

"G. Any permit, certificate or authorization for the land application, marketing or distribution of sewage sludge issued prior to October 1, 1994, shall remain in effect for the remainder of the term specified in such permit, certificate or authorization. Such permits, certificates and authorizations may be amended in accordance with the Administrative Process Act (9-6.14:1 et seq.). Any amendment after the adoption of the regulations specified in this section shall be in accordance with such regulations."

The State Board of Health, as directed by Code § 32.1-164.5, promulgated Biosolids Use Regulations. See 12 VAC 5-585-10, et seq. These Regulations define "biosolids" as:

"[A] sewage sludge that has received an established treatment for required pathogen control and is treated or managed to reduce vector attraction to a satisfactory level and contains acceptable levels of pollutants, such that it is acceptable for use for land application, marketing or distribution . . . ."

The Regulations define "land application" as:

"[T]he distribution of either treated wastewater of acceptable quality, referred to as effluent, or supernatant from biosolids use facilities, or stabilized sewage sludge of acceptable quality, referred to as biosolids, upon, or insertion into, the land with a uniform application rate for the purpose of utilization, assimilation or pollutant removal. Bulk disposal of stabilized sludge in a confined area, such as landfills, is not land application. Sites approved for land application of biosolids or supernatant in accordance with this chapter are not considered to be treatment works."

B.

The plaintiffs argue that the County's ordinances are unenforceable because they are inconsistent with state law.

7

Continuing, the plaintiffs assert that the General Assembly has authorized the State Board of Health to regulate the land application of biosolids and that the County may not enact ordinances which ban the use of biosolids in the County.

Responding, the County asserts that its ordinances are not inconsistent with state law. The County says that Code § 32.1-164.5, which authorizes the land application of biosolids in certain prescribed circumstances, does not limit the County's "role . . . in the field of sludge disposal and regulation." The County also asserts that Code § 32.1-164.5(A) is prohibitory in nature and does not preclude the County from banning the land application of biosolids. Continuing, the County argues that the Biosolids Use Regulations, promulgated by the State Board of Health, "demonstrate the unequivocal policy of the Commonwealth that localities are to continue to exercise their usual control in the field of land use. Nowhere in the state regulations does [the State Board of Health] prohibit, attempt to prohibit, or otherwise indicate that either it or the General Assembly intended to prohibit local bans on the land application of biosolids." We disagree with the County's contentions.

In King v. County of Arlington, 195 Va. 1084, 81 S.E.2d 587 (1954), we discussed the principles that we must apply when considering whether a local ordinance is in conflict with

the public policy of this Commonwealth as embodied in its statutes.  We stated:

> "It is, of course, fundamental that local ordinances must conform to and not be in conflict with the public policy of the State as embodied in its statutes.  Indeed, that principle is embodied in our statutes which require that local ordinances must 'not be inconsistent with' the state law. [Code § 1-13(17).]
> "But, 'The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements.  So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand.  The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective.  Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.'
> "If both the statute and the ordinance can stand together and be given effect, it is the duty of the courts to harmonize them and not nullify the ordinance."

Id. at 1090-91, 81 S.E.2d at 591 (citations omitted).  We restated these principles in Wayside Restaurant v. Virginia Beach, 215 Va. 231, 234, 208 S.E.2d 51, 53-54 (1974).  See

9

also <u>Trible</u> v. <u>Bland</u>, 250 Va. 20, 24, 458 S.E.2d 297, 299 (1995); <u>City of Norfolk</u> v. <u>Tiny House</u>, 222 Va. 414, 421, 281 S.E.2d 836, 840 (1981); <u>City of Lynchburg</u> v. <u>Dominion Theatres</u>, 175 Va. 35, 42, 7 S.E.2d 157, 160 (1940).

Applying these principles, we hold that the County's ordinances are inconsistent with Code § 32.1-164.5 and the Biosolids Use Regulations promulgated by the State Board of Health. As we have clearly and repeatedly stated, a local government may not "forbid what the legislature has expressly licensed, authorized, or required." The General Assembly, by its enactment of Code § 32.1-164.5, has expressly authorized the land application of biosolids conditioned upon the issuance of a permit.

The General Assembly has also directed that the State Board of Health, with the assistance of the Departments of Environmental Quality and Conservation and Recreation, promulgate the requirements and procedures for the issuance and amendment of permits. Code § 32.1-164.5(C) also enumerates, among other things, certain requirements and conditions which must be contained in the regulations that govern the land application of biosolids in this Commonwealth. The County's ordinances are inconsistent with Code § 32.1-164.5 and the Biosolids Use Regulations because the ordinances forbid certain plaintiffs from using biosolids on their

10

farmland even though those plaintiffs have obtained licenses to use biosolids pursuant to the statutory and regulatory scheme established by the General Assembly.

It is true that the Biosolids Use Regulations promulgated by the State Board of Health contemplate that local governments will have some involvement in the field of biosolids use regulation. For example, the Biosolids Use Regulations require that "[c]onformance to local land use zoning and planning should be resolved between the local government" and the holder of a permit which authorizes the permittee to use biosolids for land application. 12 VAC 5-585-260. Additionally, Regulation 12 VAC 5-585-620, which governs "[m]inimum information required for completion of a biosolids management plan utilizing land application," requires the applicant to comply with "local government zoning and applicable ordinances." Code § 32.1-165.4 and the Biosolids Use Regulations promulgated pursuant to this statute do not prohibit a local government from enacting ordinances which may affect the land application of biosolids. However, local ordinances and requirements must not be inconsistent with Code § 32.1-164.5 or the Biosolids Use Regulations.

The County, relying upon our decision in Dail v. York County, 259 Va. 577, 528 S.E.2d 447 (2000), asserts that its ordinances do not conflict with the Biosolids Use Regulations

11

because such regulations do not have "the force and effect of law."  The County's argument is without merit.

It is true, as the County asserts, that we held in <u>Dail</u> that the provisions of a challenged ordinance were not invalid because that ordinance purportedly conflicted with the "best management practices promulgated by the State Forester" which did not have "the force and effect of law."  <u>Id.</u> at 585, 528 S.E.2d at 451.  Unlike the State Forester's best management practices that we considered in <u>Dail</u>, the provisions of Code § 32.1-164.5, as well as the Biosolids Use Regulations, constitute enforceable laws of this Commonwealth.

For the reasons stated above, we will enter a declaration that the County's ordinances, enacted pursuant to the County's police power and zoning power, are void and unenforceable because both ordinances are inconsistent with Code § 32.1-164.5 and the Biosolids Use Regulations promulgated pursuant to that statute.  We will also reverse the judgment of the circuit court and enter a final judgment on behalf of the plaintiffs.

<u>Reversed and final judgment</u>.