COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


DOUGLAS L. MILLER

v.      Record No. 2971-02-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
FEBRUARY 15, 2005


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Horace A. Revercomb, III, Judge

Philip Carter Strother (Douglas L. Miller, *pro se*, on briefs).

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Douglas L. Miller appeals his misdemeanor conviction for occupying a structure without an

occupancy permit in violation of Code § 36-106. Miller contends that his conviction must be

reversed because (1) his right to due process was violated, (2) the trial judge erred by not

invalidating a King George County ordinance as contrary to law, and (3) the trial judge erred in

ruling that the County had not unlawfully withheld certificates of occupancy. For the reasons that

follow, we affirm his conviction.

I.

The record indicates that in February 2000 Miller and his wife applied for building and

zoning permits to construct a two-family dwelling on the property designated on Tax Map 22,

Parcel 103, and located at 5022/5024 Igo Road in King George County. The water supply and

sewage disposal permit which the Millers had obtained from the Virginia Department of Health and

---
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

submitted with the application was dated January 18, 2000. In the section designated "general information," the water supply and sewage disposal permit indicated a "new" water supply system and a "new" sewage disposal system; however, the design specification section indicated the proposed dwelling was to use an existing well located on an adjacent parcel and connected to another residence. The County zoning administrator notified Miller that his application showed that the well "serving . . . parcel [103] is located on an adjacent parcel . . . 102" and that an earlier permit for "parcel 102 indicates . . . the well serving parcel 102 currently serves both parcels 102 and 102B." He informed Miller that the application indicates the well will serve "three connections" and that, under a county ordinance, "it falls within the definition of a noncommunity water system and requires . . . a Special Exception Permit." The letter further informed the Millers as follows:

> According to Section 1.7.1, King George County Zoning Ordinance no structure shall be constructed which is not in conformity with all of the regulations herein specified for the district in which it is located.
>
> Based on the information above, the building permit for the proposed duplex to be located Tax Map 22, Parcel 103 may not be issued by the Department until such as either a Special Exception Permit is approved for the proposed noncommunity water system or the Health Permit is modified to reflect that Parcel 103 will have a water supply that conforms to the requirements of the King George County Zoning Ordinance.

In April 2000, Miller and his wife reapplied and obtained building and zoning permits for the same structure. Accompanying those applications, the Millers submitted a water supply and sewer permit from the Virginia Department of Health, which was modified March 31, 2000 to show a design specification indicating a new well to be installed and connected to the proposed two-family dwelling. It contained a sketch detailing the placement of a new well on parcel 103 to support the dwelling. In all other respects, it was identical to the January 18, 2000 permit and it has the designation SWP 99-932.

The record also indicates that on August 18, 2000, after the building and zoning permits had been issued, Miller obtained another water supply and sewage disposal permit from the Virginia Department of Health for parcel 103. In the space requiring general information about the water supply system, the symbol "N/A" is placed in the space designated "New ___." Under design specification, it indicates, however, that the water supply would be the existing well. In the space requiring information about the sewage disposal system, the space labelled "new" is checked. In the design specification for the sewer, it indicates 3 to 4 inches. At the top of this permit, which bears the identification SWT-00-162, someone had printed the words, "THIS PERMIT REPLACES SEW. DISP. PERMIT SWP 99-932." The record does not indicate, however, that this new permit was accepted by the County as a substitute for the permit accompanying the approved building and zoning permit, which indicates a new well is to be installed and indicates 4 inches for the sewer.

In early 2001, the Millers requested final inspections necessary to obtain a certificate of occupancy from the County. On February 28, 2001, the Millers received a letter from the County's zoning administrator notifying them that they had violated the County's zoning ordinance. The notice advised the Millers that by "connecting the dwelling currently under construction . . . to the [pre-existing] well that currently serves [other] dwellings" they had "brought the total number of potable water connections served by this well up to three," in violation of the zoning ordinances 1.9 and 2.4.3.13. The notice further advised Miller as follows:

> Section 1.7.1, Use, occupancy and construction, King George County Zoning Ordinance indicates that no structure is to be occupied or constructed except in conformity with all of the regulations specified for the district in which it is located (copy attached). In order that the dwelling on Tax Map 22, Parcel 103 may continue to be constructed and may be occupied in the future, the dwelling must be in conformance with the regulations of the King George County Zoning Ordinance. Without the benefit of a Special Exception Permit, a well may not supply potable water to more than two connections. Therefore, in order for the dwelling

- 3 -

on Tax Map 22, Parcel 103 to be in conformance with the King George County Zoning Ordinance, it may not be provided with potable water from a well serving more than two connections.

The notice informed the Millers "this decision shall be final and unappealable if not appealed within the thirty days" to the Board of Zoning Appeals. When Miller failed to appeal to the Board of Zoning Appeals, the zoning administrator revoked Miller's zoning permit because he failed to install the required well. Because the zoning permit was revoked, the building official revoked the building permit.

John Clift, a County building official, testified that he revoked Miller's building permit on April 3, 2001. Clift acted after the County zoning administrator voided Miller's zoning permit. Clift also cited Miller's "misrepresentation," noting that "[t]he original approval . . . was based on the issuance of a zoning permit and installation of a well as stated on your signed application." His letter informed Miller that "[b]ecause your zoning permit has been voided, as required by the [state building code], I am hereby revoking your building permit until such time as you can obtain a zoning permit."

Instead of appealing to the Board of Zoning Appeals, Miller appealed the denial of an "occupancy" permit to the local Board of Building Code Appeals. On April 19, 2001, the Board of Building Code Appeals found that it "does not have jurisdiction or authority over a zoning administrator's decision and [that] no adverse decision made by the code official had been properly appealed." Thus, it dismissed Miller's appeal.

Miller then appealed to the State Building Code Technical Review Board and advised the Technical Review Board that the "appeal was based on the Certificate of Inspection not the letter from [the zoning administrator]." The Technical Review Board found that "the revocation of [the building] permit . . . render[ed] the appeal of the refusal to issue the [certificate of occupancy] moot because no dispute of whether to issue a [certificate of occupancy] can be

considered if there is no valid [building permit]." The Technical Review Board also found that Miller "failed to raise the revocation of the [building] permit as an issue for the . . . Board [of Building Code of Appeals] to consider" and had failed to timely file an appeal from the revocation decision. Thus, the Technical Review Board ruled that "the appeal of the revocation of the [building] permit is not properly before the Review Board" and ordered Miller's "appeal of the code official's refusal to issue a [certificate of occupancy] to be . . . dismissed as moot."[1]

By connecting three dwellings to a single private well, Miller was deemed by the County to be operating a "Non-Community Water System" as defined by King George Zoning Ordinance Section 1.9.3. After several civil penalties and contempt citations, Miller refused to abate the violations and continued to rent the dwelling. On May 17, 2002, the County issued Miller a summons charging him with causing to be occupied a structure that did not conform to County zoning regulations in violation of King George Zoning Ordinance Section 1.7.1 and Code § 36-106.

Miller testified at trial and conceded that the duplex units have been continuously occupied and that he never received a certificate of occupancy for the units, which share a well with his home on an adjoining tract. In his defense, Miller testified:

> I don't want to install a second well to this parcel. I don't feel I am legally obligated to. If I did, the place before the permit was changed [sic] would be reserved as a drain field, and it would be very unlawful and [un]sanitary to install it there.

After considering Miller's arguments that the King George ordinance violated the constitution and state law, the trial judge made findings, including the following:

> We are here today, on a summons charging you with the violation of Section 36-106 of the Code of Virginia and, more specifically,

---

[1] On two previous appeals to this Court, Miller has raised issues concerning his dispute about the underlying King George County zoning ordinance. Those appeals concerned civil disputes. See Miller v. Bd. of Supervisors of King George County, 04 Va. App. UNP 1050032 (2004); Miller v. State Bldg. Code Tech. Review Bd., 03 Vap UNP 0365032 (2003).

as set forth in the summons, occupy or having cause to be occupied a dwelling house without an occupancy permit, and Section 36-106 incorporates by reference the Building Code that prohibits the occupancy of a dwelling without an occupancy permit.

I don't think it could be any clearer as to the form of the allegation. The counties have a right to impose valid zoning ordinances, although that is not the real issue before me.

Yet, you have raised that issue and proceeded to simply say you can't take any act that might trump the state statute, but that is not truly what is before me at this point.

I know you see it differently based upon what you have stated during your hearing.

At the conclusion of the trial on October 17, 2002, the trial judge convicted Miller of violating Code § 36-106, imposed a fine of twenty-five hundred dollars, ordered Miller to abate the violation, and to bring the dwelling into compliance with the Code.

II.

Miller contends that the trial judge's failure to sign the conviction order denied his right to due process and his right to equal protection under the laws in violation of the Fourteenth Amendment. He argues that the document in the trial court's file "which has the Judge's name typed on it . . . does not include his signature nor is it identified as a final order."

Code § 17.1-123(A) provides three means by which a circuit court may record its orders:

All orders that make up each day's proceedings of every circuit court shall be recorded by the clerk in a book known as the order book. Orders that make up each day's proceedings that have been recorded in the order book shall be deemed authenticated when (i) the judge's signature is shown in the order, (ii) the judge's signature is shown in the order book, or (iii) an order is recorded in the order book on the last day of each term showing the signature of each judge presiding during the term.

Recently in Jefferson v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (2005), the Supreme Court addressed the issue of judgments, holding as follows:

The rendition of a judgment must be distinguished from its entry on the court records. The rendition of a judgment duly pronounced

is the judicial act of the court, and the entry or recording of the instrument memorializing the judgment "does not constitute an integral part of, and should not be confused with, the judgment itself." Rollins v. Bazile, 205 Va. 613, 617, 139 S.E.2d 114, 117 (1964). The absence of the judge's signature "does not invalidate the judgment rendered." Id. at 617-18, 139 S.E.2d at 118. Therefore, contrary to defendant's implicit contention, the judgment of conviction sentencing the defendant, pronounced on March 18, 1999, was a valid judicial act without the judge's signature on the draft order.

Parenthetically, we point out that the Rollins principle does not affect the rule that: "A court speaks only through its orders." Cunningham v. Smith, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964). Accord Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). The foregoing statement deals with evidence of judicial action, that is, a declaration of historical fact. The statement, however, does not purport to govern the substantive validity of the judicial act. In the present case, the evidence of the written order entered at the September 5, 2002 revocation hearing (the court speaking through its order) shows substantively that the valid judicial act of sentencing was performed at the March 18, 1999 hearing.

___ Va. at ___, ___ S.E.2d at ___.

Although Miller contends that the final order was not signed by the trial judge and, thus, is invalid, he does not argue and did not prove that the order did not meet the requirement of Code § 17.1-123(A). Applying the principles announced in Jefferson, we hold that the judgment of conviction in this case was a valid act.

The Due Process Clause of the Fourteenth Amendment provides "no state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950). In other words, "[t]he notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." Id. (citations omitted).

Miller appears to argue that he did not have notice of the final order because of the lack of signature. However, as the record demonstrates, Miller had actual notice of the judgment from the trial court. In addition to showing the filing of the order, the record contains Miller's notice of appeal filed in the trial court on November 14, 2002. In it, Miller noted his appeal "from the final judgment of this court of Case CR02-138 heard on October 17, 2002." Miller thus had adequate and actual notice of the order and sufficient time to develop his appeal. Thus, as the Supreme Court held in Mullane, "if with due regard for the practicalities and peculiarities of the case these conditions [of notice] are reasonably met, the constitutional requirements are satisfied." 339 U.S. at 314-15. Because this record establishes no "fundamental unfairness" in the proceeding, we hold that Miller's due process claim is meritless.

Miller asserts but makes no cognizable claim that the judge's failure to sign the order violated the Equal Protection Clause of the Fourteenth Amendment. "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted). Miller does not explain and the record does not show an action resulting in discrimination against Miller. Accordingly, we hold that the record fails to support Miller's claim of error.

III.

Miller contends that the trial judge refused to hear his arguments that the County's ordinance limiting the number of residential connections to two dwellings was unconstitutional. Miller further argues that the trial judge erred in not striking down the ordinances as "inconsistent with the Constitution and laws." We hold that the trial judge did not err, and we further hold that the County's ordinance restricting the number of service connections to each

- 8 -

well unless an exemption is obtained was a valid exercise of the County's zoning authority pursuant to Code §§ 15.2-2200 to 15.2-2327.

Building code violations are "deemed a misdemeanor and any owner or any other person, firm or corporation convicted of such a violation shall be punished by a fine of not more than $2,500." Code § 36-106. The statute further provides that "each day the violation continues after conviction or the court-ordered abatement period has expired shall constitute a separate offense" and that "[i]f the violation remains uncorrected at the time of the conviction, the court shall order the violator to abate or remedy the violation in order to comply with the Code." Id.

Prior to trial for this misdemeanor criminal offense, Miller acting *pro se* filed in the circuit court a "motion for summary judgment," which alleged that the "buildings are safe to inhabit and meet all building code requirements," and he requested "striking those sections of the . . . County ordinances offensive to the Constitution and State Law." When the trial judge explained to Miller the function of the summary judgment motion in a civil context, Miller indicated "[t]here are no facts in dispute in this case." Ruling that "it is not an appropriate motion on a criminal charge," the judge denied the motion. Upon the agreement of Miller and the prosecutor, the judge accepted as evidence all exhibits that were part of the files in the two civil cases. See footnote 1 supra.

At trial, Miller conceded that he had "three buildings connected to one well, okay." In his closing argument Miller raised many issues, some of which concerned the safe conditions of the buildings, his request for occupancy permits, and other matters that had been raised in the civil proceedings. He also argued, however, "that the county ordinance regarding shared wells is invalid."

Although Miller contends the trial judge did not address his argument that the County ordinances were invalid, we believe that the trial judge tacitly did so when he ruled that "[t]he

- 9 -

counties have a right to impose valid zoning ordinances." During the closing argument, the trial judge engaged Miller, who was *pro se*, by responding to Miller's questions and giving him a fair amount of leeway in raising a wide range of concerns about the County's process. In convicting Miller of the misdemeanor offense, the trial judge resolved against Miller the conflict in the facts and the question whether the ordinances were valid.

As a threshold issue, we assume without deciding that Miller's failure to appeal the revocation of his zoning permit to the Board of Zoning Appeals and his failure to raise his constitutional and statutory claims at either of two civil trials does not preclude him from challenging the validity of the ordinance now during his criminal appeal. Limited to these facts, and because the issue is a matter of law we review *de novo* on appeal, Miller is not precluded from challenging the ordinance now. See generally McKart v. United States, 395 U.S. 185 (1969) (holding that failure to appeal draft classification did not foreclose challenging the validity of the classification in a criminal proceeding). We hold, however, that the trial judge did not err in finding to be valid the County's Ordinance 1.7.1, which limited the number of dwellings that could be served by one well.

We note that the water supply and sewage disposal permit Miller obtained on August 18, 2000 from the Department of Health, which allowed as many as four residential service connections to supply potable water, was not the permit that accompanied his approved zoning application. Without regard for this fact, Miller argues that County Ordinance 1.7.1, which limits the number of water connections permitted to each well to two, violates the statutory prohibition against localities enacting ordinances "inconsistent with the Constitution and laws of the United States or of this State." Code § 1-13.17. He contends the ordinance usurps the authority of the State Water Control Board. Thus, he argues "the ordinance in question is invalid and unconstitutional."

Applying Code § 1-13.17, we have held that "if both the statute and the ordinance can stand together, courts are obligated to harmonize them, rather than nullifying the ordinance." Granny's Cottage, Inc. v. Town of Occoquan, 3 Va. App. 577, 582, 352 S.E.2d 10, 13 (1987). The General Assembly grants counties and municipalities the authority to enact zoning ordinances. See Code §§ 15.2-2280 to 15.2-2316. This authority includes, *inter alia*, power to regulate, restrict, permit, prohibit, and determine:

> 1. The use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses;
>
> 2. The size, height, area, bulk, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures;
>
> 3. The areas and dimensions of land, water, and air space to be occupied by buildings, structures and uses, and of courts, yards, and other open spaces to be left unoccupied by uses and structures, including variations in the sizes of lots based on whether a public or community water supply or sewer system is available . . . .

Code § 15.2-2280.

In addition, "[z]oning ordinances shall be for the general purpose of promoting the health, safety or general welfare of the public." Code § 15.2-2283. Thus, counties may reasonably consider the following in enacting zoning ordinances:

> "(i) adequate light, air, convenience of access . . . (iii) to facilitate the creation of a convenient, attractive and harmonious community; (iv) *to facilitate the provision of adequate . . . water and sewerage* . . . (vi) to protect against overcrowding of land, undue density of population in relation to the community facilities existing or available, obstruction of light and air, danger and congestion in travel and transportation . . . .

Code § 15.2-2283 (emphasis added). Also, under certain situations, Code § 15.2-2315 allows local governments to enact ordinances requiring higher standards than found elsewhere in the Code.

> Whenever the regulations made under authority of this article require a greater width or size of yards, courts or other open spaces, require a lower height of building or less number of stories, require a greater percentage of lot to be left unoccupied *or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this article shall govern.*

Code § 15.2-2315 (emphasis added).

The State Water Control Board in conjunction with the Department of Health permits the construction of private wells. See Code §§ 32.1-176.1 to 32.1-176.7. "The Board shall adopt regulations pertaining to the location and construction of private wells in the Commonwealth." Code § 32.1-176.4. Similarly, "[t]he Board may issue any ground water withdrawal permit upon terms, conditions and limitations necessary for the protection of the public welfare, safety and health." Code § 62.1-266.

Here, the Board determined that the maximum number of connections permitted to the well Miller was to construct was four. The permit was not the Board's authorization for Miller to connect four dwellings to that well in contravention to the County's zoning laws. Such an interpretation would clearly exceed the purpose of protecting state waters and decidedly infringe on local government's zoning power. The Code allows the County to limit the numbers of buildings such a well could service, so long as the provisions were reasonable and did not violate "applicable state water quality standards." Code § 15.2-2283. We hold, therefore, that the County's ordinance is reasonable, was within the County's zoning authority, and does not infringe on the Department of Health's authority to regulate private wells.

Miller argues that the facts in his case are sufficiently similar to that in Blanton v. Amelia County, 261 Va. 55, 540 S.E.2d 869 (2001) (now superseded by Code § 62.1-44.19:3), to require

us to hold the County's ordinance invalid.[2] We do not agree with his analysis. In <u>Blanton</u>, the plaintiffs applied for and obtained a permit from the State Health Commissioner authorizing them to use biosolids (a type of sewerage sludge used as fertilizer) on their farmlands. 261 Va. at 58, 540 S.E.2d at 870. After conducting public hearings, the Board of Supervisors of Amelia County adopted two ordinances banning the use of biosolids in the County, finding them to be "a nuisance . . . and constituting a danger to the health, safety, and general welfare" to the community. The plaintiffs sought declaratory judgment that the ordinance violated Code § 1-13.17 as contrary to state law. The Supreme Court agreed, declaring that the General Assembly "expressly authorized the land application of biosolids conditioned on the permit" and, thus, finding that the ordinance was contrary to law. 261 Va. at 64, 540 S.E.2d at 874.

Miller argues that, like the <u>Blanton</u> plaintiffs, he had a valid permit and, as in <u>Blanton</u>, the County enacted an ordinance prohibiting what the state had authorized. As in <u>Blanton</u>, Miller had a valid permit, in his case, to construct a well. His zoning and building permits were issued based upon his representation to build an additional well as provided in the documents accompanying his application. Here the analogy ends. Unlike <u>Blanton</u>, the ordinance did not seek to limit the activity the Department of Health authorized. The County's ordinance did not prohibit Miller from constructing his well according to the water supply and sewage disposal permit's specifications. In other words, Miller could have constructed his well. In fact, the County, through its zoning permit, expressly required the well's construction. In comparison,

---

[2] The General Assembly reacted to <u>Blanton</u> by passing legislation that clarifies the role of localities in Virginia's biosolids regulatory scheme. According to this recent legislation "any county, city or town may adopt an ordinance that provides for the testing and monitoring of the land application of sewage sludge within its political boundaries to ensure compliance with applicable laws and regulations."

<u>O'Brien v. Appomattox County</u>, 293 F. Supp. 2d 660, 663 (D. Va. 2003).

- 13 -

whereas the plaintiffs' permit in <u>Blanton</u> expressly allowed for the application of biosolids on their farmlands, Miller's water supply and sewage disposal permit did not authorize Miller to construct dwellings. Rather, the permit allowed him to construct a well. <u>Blanton</u> is not applicable to Miller's circumstance.

Miller also contends the ordinance should have been declared unconstitutional because it had no relationship to the state's police power, and thus constitutes a taking in violation of the Fifth Amendment. We disagree. The power of local government to enact zoning ordinances has long been held constitutional. <u>See, e.g.</u>, <u>Village of Euclid v. Ambler Realty Co.</u>, 272 U.S. 365 (1926) (holding Euclid's zoning constitutional). Zoning laws and zoning ordinances will be upheld against substantive and procedural due process and equal protection attacks unless the ordinance is arbitrary, unreasonable and has no relationship to the public's safety, health, welfare, and morals. <u>Id.</u>

> The exercise of the police power is subject to the constitutional guarantee that no property shall be taken without due process of law and where the police power conflicts with the Constitution the latter is supreme, but courts will not restrain the exercise of such power except when the conflict is clear.

<u>Bd. of Super. of Fairfax Co. v. Allman</u>, 215 Va. 434, 443-44, 211 S.E.2d 48, 54 (1975). The Supreme Court long ago held as follows:

> The benefits of proper zoning laws are everywhere recognized. We need not stop to detail them. Neither is it necessary that we restate the principles governing the validity of such laws. Suffice it to say that if reasonable they are construed to be a lawful exercise of the State's police power. If their reasonableness is fairly debatable, the legislative judgment stands.

<u>Fairfax County v. Parker</u>, 186 Va. 675, 680, 44 S.E.2d 9, 11-12 (1947).

We hold that the County's zoning ordinance is valid and that the trial judge did not err in so ruling.[3]  Accordingly, we affirm Miller's conviction.

Affirmed.

---

[3] We further note that the County revoked Miller's zoning and building permits based on grounds besides the zoning ordinance.  John Clift testified that he revoked Miller's building permit on April 3, 2001, after the zoning administrator voided Miller's zoning permit due to misrepresentations on his application on which an initial permit was issued.  Clift testified that he was required to revoke Miller's building permit, because Miller made these misrepresentations on his zoning application.  Thus, the denial of Miller's zoning and building permits was based at least in part on Miller's decision to ignore the basis upon which he obtained the permits and to proceed as if those representations had not existed.