# CIRCUIT COURT OF THE CITY OF NORFOLK

Blue Horseshoe Tattoo, V, Ltd., et al.

v.

City of Norfolk et al.

January 17, 2007

Case No. CL06-3214

BY JUDGE ALFRED M. TRIPP

This case came before the Court on December 5, 2006, for hearing on Respondents' (hereafter, "the City") Demurrer to Petitioners' (hereafter, "Blue Horseshoe") Amended Petition for Writ of Mandamus and Other Relief. In the time since the hearing, the Court has considered the arguments of counsel presented at the hearing as well as the written submissions of both parties and is now prepared to issue a ruling. Respondents' Demurrer is sustained in part and overruled in part.

According to the Supreme Court of Virginia, the "issuance of a writ of mandamus is 'an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon [the official] by law'." *Cartwright v. Commonwealth Transp. Comm'r*, 270 Va. 58, 63 (2005) (citing *Richlands Medical Assoc. v. Commonwealth*, 230 Va. 384, 386 (1985)). Furthermore, the Court noted in *Cartwright* that "the writ of mandamus ...

only issues when there is a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and where there is no other specific and adequate legal remedy." *Id.* (citations omitted).

In its Amended Petition, Blue Horseshoe asserts that the City has denied it both a business license to operate a tattoo studio and a certificate of occupancy for a property that it has leased in the City of Norfolk. Blue Horseshoe contends that the City has denied these permits, which are necessary to operate a business in Norfolk, because of City Ordinance § 29-64, which prohibits the act of tattooing as well as the operation of a "tattoo establishment" in Norfolk. The ordinance provides that violations of the prohibition will be punished as a Class 1 misdemeanor. In its Amended Petition, Blue Horseshoe takes the position that Ordinance § 29-64 is void because it violates the Dillon Rule and is inconsistent with the Code of Virginia. The Amended Petition states that the issuance of business licenses and occupancy permits are ministerial acts and that the City's failure to issue them gives Blue Horseshoe the right to relief by a writ of mandamus.

Blue Horseshoe argues that the City's prohibition of tattooing violates the Virginia Constitution by impinging upon Blue Horseshoe's rights to free speech and expression. Blue Horseshoe also alleges a violation of its rights to due process and to equal protection under the law when it asserts that the City has not enforced Ordinance § 29-64 against businesses that apply permanent makeup.

The City has filed a Demurrer to Blue Horseshoe's Amended Petition. According to the Code of Virginia, a defendant may file a demurrer when "a pleading does not state a cause of action or ... fails to state facts upon which the relief demanded can be granted." Code of Virginia, § 8.01-273. In ruling on a demurrer, the "trial court is required to consider as true all material facts that are properly pleaded." *Luckett v. Jennings*, 246 Va. 303, 307 (1993). The filing of a demurrer, however, "does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71 (1988).

## Constitutional Claims

### Free Speech

In its brief, the City has cited several cases, both from federal courts and from state courts of other jurisdictions, in support of its position that tattooing is not constitutionally protected speech. Neither party cited, and the Court is not aware of, any case in which a Virginia court addressed the question of whether tattooing is constitutionally protected speech. The

Supreme Court of Virginia, however, has held that "Article I, § 12, of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment." *Elliott v. Commonwealth*, 267 Va. 464, 473-74 (2004). Accordingly, the federal cases cited by the City that interpret the First Amendment of the United States Constitution are relevant in determining what kinds of speech and conduct are protected by the Constitution of Virginia.

The City has cited *Riggs v. City of Fort Worth*, 229 F. Supp. 2d 572, 580-81 (N.D. Tex. 2002), for the proposition that "tattoos are not protected expressions under the fundamental First Amendment right of free speech." In reaching its decision, the *Riggs* court pointed to the decision of the Eighth Circuit in *Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303, 1307 (8th Cir. 1997). The *Stephenson* court declined to extend the protection of the First Amendment to a student's tattoo. The student had admitted, however, and the court found, that her tattoo was "nothing more than `self-expression' " and thus outside the scope of the First Amendment. *Id.* The *Stephenson* court cited the holding of the United States Supreme Court in *Texas v. Johnson*, 491 U.S. 397, 404 (1989), for the proposition that the protection of the First Amendment is triggered not by mere self-expression but by the combination of "an intent to convey a particularized message" and a finding that "the likelihood was great that the message would be understood by those who viewed it." *Id.* Although the *Stephenson* case seems to leave open the possibility that a particular tattoo might constitute protected political speech, the City's argument that tattoos on the whole are not protected by the federal First Amendment or by Article I, § 12, of the Constitution of Virginia is well-taken. It is supported by the holding of the United States District Court for the District of Minnesota in *Yurkew v. Sinclair*, 495 F. Supp. 1248, 1253 (D. Minn. 1980), that "the actual process of tattooing is not sufficiently communicative in nature so as to rise to the plateau of important activity encompassed by the First Amendment." The Court sustains the City's demurrer to Blue Horseshoe's claim that City Ordinance § 29-64 violates its constitutional right to free speech.

*Equal Protection*

Blue Horseshoe also alleges that the City of Norfolk has violated its right to equal protection under the law. In *Mahan v. National Conservative Political Action Committee*, 227 Va. 330 (1984), the Supreme Court of Virginia explained the principles of equal protection as follows:

[W]e will uphold statutory classifications if they bear some rational relationship to a legitimate legislative interest or purpose. See *Trimble v. Gordon*, 430 U.S. 762 (1977). We have said that a classification ordinarily will be upheld "if any state of facts can be reasonably conceived that would support it." *Blue Cross*, 221 Va. at 363, 269 S.E.2d at 836; accord *I.D.A. v. La France Cleaners*, 216 Va. 277, 282, 217 S.E.2d 879, 883 (1975); *Mandell v. Haddon*, 202 Va. 979, 989, 121 S.E.2d 516, 524 (1961). But where the statute creates a "suspect classification" (*e.g.* race, sex, or religion) or where it affects a fundamental constitutional right, the presumption of constitutionality fades, and the "strict scrutiny" test, rather than the more relaxed "rational relationship" test, applies. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1 (1973).

*Mahan*, 227 Va. at 335-36. In its brief, Blue Horseshoe argues that the Court should review Ordinance § 29-64 under the "rational basis" standard. Petitioner's Brief, p. 4. In view of the Court's finding that tattooing does not constitute protected speech, rational basis review is appropriate in this case.

In its Amended Petition, Blue Horseshoe alleges that there are businesses in the City of Norfolk that have been issued business licenses referencing permanent makeup or that the City of Norfolk has not enforced Ordinance § 29-64 against businesses that apply permanent makeup. Rule 1:4(k) of the Rules of the Supreme Court of Virginia specifically permits parties to all proceedings to "plead alternative facts." The Court finds that Blue Horseshoe has permissibly pleaded in the alternative in its Amended Petition.

Blue Horseshoe contends that the City has drawn a distinction between permanent makeup and tattooing and argues that this distinction does not have any rational relationship to a legitimate state end. Blue Horseshoe maintains that the City has violated its right to equal protection under the law. On its face, however, Ordinance § 29-64 does not distinguish between tattooing and permanent makeup. The ordinance makes no mention of permanent makeup at all; it broadly defines "tattoo" as "to mark or color the skin by pricking in coloring matter so as to form indelible marks or figures or by the production of scars." Code of Ordinances, § 29-64. *Compare* Code of Virginia § 18.2-371.3 (statute specifically includes permanent make-up in its definition of the term "tattoo").

In the Amended Petition, Blue Horseshoe alleges that the City has applied the ordinance inconsistently. As the Supreme Court of the United States recognized in *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886), "[t]hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Admittedly, *Yick Wo* addressed discrimination by the government against Chinese aliens, a "suspect class" of people under equal protection jurisprudence.

The Supreme Court of Virginia, however, addressed a similar situation in *Board of Dirs. of the Tuckahoe Ass'n v. City of Richmond*, 257 Va. 110 (1999). In *Tuckahoe*, the Supreme Court addressed the validity of a Richmond ordinance that taxed commercial and residential utility consumers at different rates. The Court found that the consumers' claim that the ordinance was unconstitutional as applied was unsupported by the evidence. *Id.* at 118. The Court did, however, imply that evidence showing that the consumers were "treated differently under the ordinance from any other" similarly situated group or that the "ordinance's application ... was arbitrary or unreasonable" would have supported such a claim. *Id.* Because the Amended Petition alleges that the City has granted licenses to businesses that apply permanent makeup, or, in the alternative, that the City has not enforced Ordinance § 29-64 against businesses that apply permanent makeup, Blue Horseshoe has pleaded facts to support its contention that Ordinance § 29-64 is unconstitutional as applied. Therefore, the City's demurrer to Blue Horseshoe's claim of an equal protection violation is overruled.

*Dillon Rule*

Blue Horseshoe bases much of its argument upon the Dillon Rule and cites the ruling of the Supreme Court of Virginia in *Richmond v. Confrere Club of Richmond, Inc.*, 239 Va. 77 (1990). In that case, the Supreme Court noted that: "In determining the legislative powers of local governing bodies, Virginia follows the Dillon Rule of strict construction. The Dillon Rule provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *Id.* at 79 (citations omitted).

The argument in Blue Horseshoe's brief, however, centers on the conflict between City Ordinance § 29-64 and Virginia Code § 15.2-912,

which permits localities to regulate the sanitary conditions of tattoo parlors. The City argues that, by virtue of Virginia Code § 15.2-100, Virginia Code § 15.2-912 cannot act to repeal Ordinance § 29-64.

Virginia Code § 1-248 reads as follows: "The Constitution and laws of the United States and of the Commonwealth shall be supreme. Any ordinance, resolution, bylaw, rule, regulation, or order of any governing body or any corporation, board, or number of persons shall not be inconsistent with the Constitution and laws of the United States or of the Commonwealth." In 2001, the Supreme Court of Virginia decided *Blanton v. Amelia County*, 261 Va. 55 (2001). Former Virginia Code § 1-13(17), the predecessor to Code § 1-248, was in effect at the time of the *Blanton* decision. Both statutes require that local ordinances not be inconsistent with the laws of the Commonwealth.

In *Blanton*, several individuals and corporations involved in farming in Amelia County sought injunctive and declaratory relief against the County, which had passed local ordinances prohibiting the use of biosolids in Amelia County. The General Assembly had enacted legislation authorizing state agencies to issue permits for and promulgate regulations relevant to the application to land of biosolids, a type of sewage sludge.

The Supreme Court ruled that Amelia's ordinances prohibiting the application of biosolids to land located in Amelia County were "void and unenforceable" because they were inconsistent with the General Assembly's biosolids legislation. *Blanton*, 261 Va. at 65. Specifically, the Court held that the General Assembly "by its enactment of Code § 32.1-164.5 [governing the land application, marketing, and distribution of sewage sludge], ha[d] expressly authorized the land application of biosolids conditioned upon the issuance of a permit." *Id.* at 64.

In support of its holding, the *Blanton* court quoted at length from *King v. County of Arlington*, 195 Va. 1084 (1954):

> It is, of course, fundamental that local ordinances must conform to and not be in conflict with the public policy of the State as embodied in its statutes. Indeed, that principle is embodied in our statutes which require that local ordinances must "not be inconsistent with" the state law.
>
> But, "The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an

ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail."

If both the statute and the ordinance can stand together and be given effect, it is the duty of the courts to harmonize them and not nullify the ordinance.

*Blanton*, 261 Va. 63-64 (internal citations omitted).

*Blanton* is analogous to the present case. The General Assembly has enacted Va. Code § 15.2-912, which provides that "[a]ny locality may by ordinance regulate the sanitary condition of the personnel, equipment, and premises of tattoo parlors and body-piercing salons and specify procedures for enforcement of compliance with the disease control and disclosure requirements of § 18.2-371.3." In addition, Va. Code § 15.2-912 dictates that "[l]ocalities requiring regulation of tattoo parlors and piercing salons shall include in such ordinance authorizations for unannounced inspections by appropriate personnel of the locality." By enacting Va. Code § 15.2-912, the General Assembly has authorized the practice of tattooing. *See Ancient Art Tattoo Studio v. City of Chesapeake*, 56 Va. Cir. 210, 210 (2001) (holding that Va. Code § 15.2-912 "allows for the regulation, not the banning of tattoo studios. Had the legislature intended to allow localities to prohibit the existence of tattoo studios, the legislature would have stated such.").

In addition, the General Assembly has enacted Virginia Code § 18.2-371.3, a criminal statute which prohibits the tattooing for hire or consideration of a person under eighteen years of age, with certain exceptions, and requires any person who tattoos another to comply with guidelines of the federal Centers for Disease Control and Prevention. Furthermore, § 18.2-371.3 requires any person who tattoos another to make certain disclosures about

tattooing to the client. Violation of the statute is punished as a Class 1 Misdemeanor. The City ordinance enacts a total ban on tattooing, which is in conflict with Virginia's public policy of restricting but not banning tattooing.

After *Blanton*, the General Assembly modified its statutory scheme concerning biosolids, but the holding of the case has not been overruled and is applicable to the present case. Moreover, Virginia Code § 1-248 is unequivocal in its mandate that local ordinances be consistent with the laws of the Commonwealth. This statute does not differentiate between those local ordinances that have been enacted pursuant to a city charter and those that have not. At this point, the Court is not persuaded that Virginia Code § 15.2-100 relieves the City of its obligation to maintain ordinances that are consistent with the public policy and laws of the Commonwealth. At the very least, Blue Horseshoe has pleaded sufficient facts to allow its Amended Petition to survive the City's Demurrer to its claim that the City's ordinance is not consistent with state law. Therefore, the Demurrer is overruled with respect to that claim.