Present: All the Justices

JOHN J. CAPELLE, ET AL.

v.  Record No. 040569   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    January 14, 2005
ORANGE COUNTY, ET AL.


FROM THE CIRCUIT COURT OF ORANGE COUNTY
Daniel R. Bouton, Judge

In this appeal, we consider whether the circuit court erred in holding that a zoning ordinance permitted construction of an access road to transport mined materials across land zoned for residential use.

The land in question is part of a 139-acre lot (the property) located near Barboursville in Orange County.  A large portion of the property is zoned for agricultural use and a smaller part is zoned for limited residential use.  On the part of the property zoned for agricultural use, a mining operation is permitted by special use permit.

The residential use portion of the property is situated between the agricultural use portion and Route 738, a public highway.  The complainants are Orange County residents (the landowners) who own adjoining land or nearby properties.  Several of the landowners live in the same limited residential zoning district that includes a portion of the property.

Defendant General Shale Brick, Inc. (General Shale) owns a brick manufacturing plant near the property and contracted to

purchase the property to obtain mining materials for its brick production. In December 2001, General Shale, with the property owners' permission, applied for a special use permit to perform mining activities on the part of the property zoned for agricultural use. Although the special use permit request applied only to the part of the property located in the agricultural zoning district, the "operation plan narrative" that General Shale submitted with its application included a proposal to construct an access road across the portion of the property zoned for limited residential use to transport raw materials from the mining site to Route 738.

After conducting public hearings, the Orange County Planning Commission forwarded General Shale's application for a special use permit to the Board of Supervisors of Orange County (the Board) without recommendation. The Board approved the application with certain conditions. General Shale then purchased the property to engage in the mining activities described in the special use permit.

The landowners filed an amended bill of complaint in the circuit court against General Shale and Orange County alleging that the special use permit violated both the Orange County Code (the County Code) and the Code of Virginia, and that the Board's approval of the special use permit was arbitrary and capricious, and was unreasonable. The landowners sought a declaratory

2

judgment that the Board's decision was illegal, and requested an injunction to prevent the Board from issuing the special use permit.

After hearing argument on the parties' cross-motions for summary judgment, the circuit court denied the motions. The court held that the road was permitted as an accessory use in the limited residential district incident to the special use permit for mining in the agricultural district, because all the uses occurred on the same "lot." However, the court concluded that a trial was necessary to resolve the issue whether the process of transporting mined materials over an access road was part of the mining activity itself or was an accessory use to the mining activity.

At trial, each defendant made a motion to strike the evidence at the conclusion of the landowners' case. The circuit court granted the defendants' motions, holding that the landowners had failed to present sufficient evidence to prove their allegations that General Shale's intended use of the access road was a mining activity in itself, and that the Board's decision to issue the special use permit was unreasonable. The landowners appeal from the circuit court judgment.

The primary issue in this appeal involves several sections of the County Code, which are part of the County's zoning

ordinance.  County Code § 70-277 states that "[a]ny use not expressly permitted or permitted by special use permit in a specific district is prohibited."  County Code § 70-302, which applies to land zoned for agricultural use, permits as a matter of right seven listed uses "and any accessory use that is customarily incidental to such uses."  County Code § 70-303, which also applies to land zoned for agricultural use, allows the operation of a "[m]ine or quarry" by special use permit.

In limited residential zoning districts, the County Code permits as a matter of right five specified uses and "any customarily incidental accessory use."  County Code § 70-332.  "Accessory use," a term applicable to both agricultural and limited residential districts, is defined as "a secondary and subordinate use or structure customarily incidental to, and located upon the same lot occupied by, the main use or structure."  County Code § 70-1.  A "lot" is defined as "a parcel of land having fixed boundaries, recorded by the clerk of the circuit court as an individual unit of real estate for the purpose of ownership, conveyance or taxation."  Id.

The landowners argue that the circuit court erred in holding that the zoning ordinance provisions allow, as an accessory use to mining conducted in an agricultural district, the extension of an access road into a limited residential district.  The landowners assert that zoning district

4

boundaries, rather than lot lines, dictate which uses are permissible on each portion of the property. Thus, the landowners argue that even if the transportation of mined materials is considered an "accessory use" to the mining operation, such accessory use is not allowed on the portion of the property zoned for limited residential use.

In response, the defendants argue that the circuit court properly applied the plain language of the County Code. The defendants first rely on County Code § 70-332, and its language permitting "any customarily incidental accessory use" in a limited residential zoning district. The defendants also rely on the County Code definition of "accessory use," which defines the term in relation to the same lot as the main use. County Code § 70-1. Thus, the defendants contend that General Shale's proposed access road crossing the limited residential zoning district is permitted as an accessory use to the mining use under the terms of County Code § 70-332 because the main use, the mining operation, is conducted on the same lot.

The defendants further assert that it would be absurd to prohibit from limited residential districts those accessory uses that are incidental to agricultural uses on the same lot. For example, the defendants contend that under the landowners' interpretation of the zoning provisions, a cattle farmer could

not transport cattle to market over a section of his farm zoned for limited residential use.

In considering the parties' arguments, we first state certain established principles that govern the construction of a zoning ordinance. We employ the plain and natural meaning of the words contained in the ordinance. Donovan v. Board of Zoning Appeals of Rockingham Co., 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996); McClung v. County of Henrico, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959). Although we give consideration to the purpose and intent of the ordinance, we are not permitted to extend the ordinance provisions by interpretation or construction beyond such intent and purpose. Donovan, 251 Va. at 274, 467 S.E.2d at 810; Gough v. Shaner, 197 Va. 572, 575, 90 S.E.2d 171, 174 (1955).

The issue in this appeal requires us to harmonize certain County Code provisions that arguably are facially conflicting when applied to the facts of this case.[*] When one County Code provision addresses a subject in a general way and another deals with a part of the same subject in a more specific manner, the two provisions should be harmonized, if possible, and where they conflict, the more specific provision prevails. Frederick Co.

School Board v. Hannah, 267 Va. 231, 236, 590 S.E.2d 567, 569 (2004); Halifax Corp. v. First Union National Bank, 262 Va. 91, 102, 546 S.E.2d 696, 704 (2001); County of Fairfax v. Century Concrete Servs., 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997); Virginia National Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979).

In this case, the more general provision addressing accessory uses appears in the definition section of the County Code that pertains to zoning. As indicated above, that provision defines "accessory use" as "a secondary and subordinate use or structure customarily incidental to, and located upon the same lot occupied by, the main use or structure." County Code § 70-1. This definition section, however, also contains a limiting provision stating that the defined words and phrases "shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning." Id.

In conjunction with those provisions, we also consider the more specific County Code provision that employs the term "accessory use" in the express context of limited residential

---

[*] Because the landowners did not assign error to the circuit court's ruling that the hauling of mined material is an accessory use to the principal activity of mining, and does not constitute mining itself, we will assume, without deciding, that such ruling was correct for purposes of our analysis.

zoning districts.  In that provision, County Code § 70-332,

permitted uses are defined as follows:

> In the limited residential district, land may be used for the following uses, and any customarily incidental accessory use, including home occupations:
>
> (1)  Single-family dwelling.
>
> (2)  Agriculture, except keeping of any animals other than those customarily kept as household pets.
>
> (3)  Place of worship.
>
> (4)  Public use such as school, park, library, fire and rescue station, public utility, or maintenance facility.
>
> (5)  Sign subject to [certain other sections].

When we consider the term "accessory use" in the context of

this disputed provision, we conclude that the term refers to

uses customarily incidental to the listed permitted uses in

limited residential zoning districts.  The very language of the

provision signals this construction, because the phrase "and any

customarily incidental accessory use" immediately follows,

without qualification or distinction, language referring only to

permitted uses in limited residential zoning districts.  Thus,

we conclude that this phrase, and the County Code section in

which the phrase appears, deals exclusively with permitted uses

in a limited residential district.  See County Code § 70-332.

The defendants' contrary construction is untenable because

it would allow in a limited residential district any accessory

use to a main use located on a differently-zoned part of the same lot, irrespective of the nature and intensity of that main use.  Thus, under the defendants' construction of this provision, a solid waste weighing station, as a secondary structure customarily incidental to the operation of a sanitary landfill, and an access road to the landfill site, could both be located on a lot in a limited residential zoning district, provided that the landfill itself was operated by special use permit on the portion of the same lot zoned for agricultural use.  Plainly, the drafters of the County Code did not intend such a result, as reflected by their provision that the "limited residential district . . . protects [low-density residential] areas from the traffic, noise and other effects of [more intensive uses] and avoids conflicts with agricultural uses." County Code § 70-331.

Our conclusion is further reinforced by County Code § 70-277, which states that "[a]ny use not expressly permitted or permitted by special use permit in a specific district is prohibited."  Here, a mining operation is not an expressly permitted use in a limited residential zoning district, as evidenced by County Code § 70-332 set forth above, and is not allowed by special use permit in a limited residential zoning district.  The County Code restricts uses permitted by special use permit in a limited residential zoning district to:

> (1) Elder care center, child day care center, or nursery school.
>
> (2) Keeping of animals other than those customarily kept as household pets.
>
> (3) Office of less than 4,000 square feet gross floor area, including professional or contracting office.
>
> (4) Private cultural, recreational or institutional use.

County Code § 70-333. Therefore, because a mining operation is not a permitted use, or a use allowed by special use permit in a limited residential zoning district, the access road to the mining operation, which is an accessory use to the main use, also is prohibited in a limited residential zoning district.

We find no merit in the defendants' argument that because the County Code specifically restricts accessory uses in agricultural districts to "such uses" permitted in those districts, but employs the phrase "any customarily incidental accessory use" when referring to accessory uses in limited residential districts, the proposed access road is allowed as an accessory use in a limited residential district. The defendants' argument violates a basic rule of statutory construction, namely, that in construing legislative enactments we are not permitted to isolate single phrases but must consider them in the context in which they are found. See <u>Herndon v. St. Mary's Hosp.</u>, 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003);

10

<u>Shelor Motor Co. v. Miller</u>, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001); <u>Cummings v. Fulghum</u>, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).

The term "such uses" appears in the provision dealing only with permitted uses in agricultural districts, County Code § 70-302, which does not include mining operations like the one proposed by General Shale and, therefore, the term is irrelevant to our analysis. Further, as we have already observed, the term "any customarily incidental accessory use" appears in the County Code provision dealing only with permitted uses in limited residential districts. County Code § 70-332. Therefore, when considered in the context of the County Code sections in which they appear, neither term identified by the defendants supports their position under the facts before us.

The defendants correctly note, however, that this construction of the various County Code provisions limits the agricultural uses that may coincide with limited residential uses on the same lot, when road access to the agricultural portion of the property must pass through the limited residential part of the property. Nevertheless, this observation cannot affect our analysis, which is restricted by the language of the zoning provisions themselves. The choices that must be made in drafting local zoning ordinances are subjects for legislative consideration, and are not subjects for

11

action by the courts.  Accordingly, we conclude that the circuit court erred in holding that the County Code permitted the proposed access road as an accessory use in the limited residential district incident to the special use permit for mining in the agricultural district.

For these reasons, we will reverse the circuit court's judgment regarding the proposed access road, affirm the remainder of the judgment that is not challenged in this appeal, and enter final judgment.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>

12