Present: All the Justices

WEST LEWINSVILLE HEIGHTS
CITIZENS ASSOCIATION, ET AL.

v.  Record No. 042274

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY, ET AL.

                              OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        September 16, 2005
BOARD OF ZONING APPEALS
OF FAIRFAX COUNTY

v.  Record No. 042326

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY, ET AL.

               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       Dennis J. Smith, Judge

     These appeals present two major issues.  The first issue,

which is procedural in nature, is whether a petition for a writ

of certiorari from a decision of a board of zoning appeals was

timely when it was filed within 30 days after a letter sent

from the board's clerk stating the board's final decision.  The

second issue, involving the merits of the case, is whether a

zoning ordinance permitted a county park authority to allow a

private institution regular use of a field in a public park

without altering the park's public use classification.

     Lewinsville Park (the Park) is a public park of about 38

acres located in a residential zoning district (the R-3

district) in Fairfax County.  The Park is owned and operated by

the Fairfax County Park Authority (the Park Authority) and provides a variety of recreational facilities.  Included among these facilities is a lighted rectangular field, known as Field #2.

The Park currently is classified as a "public use."  In the R-3 district in which the Park is located, "public uses" are permitted by right.  See Fairfax County Zoning Ordinance (Zoning Ordinance) § 3-302.  Certain other uses, such as "[c]olleges [or] universities," and "[s]ports arenas [or] stadiums," are permitted in an R-3 district only by special exception.  Zoning Ordinance § 9-301.

In January 2003, the Park Authority entered into a Memorandum of Agreement (the Agreement) with McLean Youth Soccer, Inc. (MYS), a private, non-profit organization that operates several youth soccer leagues in Fairfax County.  Under the Agreement, MYS agreed to finance and install a synthetic turf playing surface and other related improvements to Field #2, at a cost not to exceed $800,000.  In exchange, the Park Authority agreed to allocate to MYS approximately 3,187 hours per year of reserved playing time on Field #2.  The Agreement had an initial term of five years, with an automatic renewal provision for an additional five-year term.

In the Agreement, the Park Authority also authorized MYS to assign to Marymount University (Marymount), a private

2

institution located in neighboring Arlington County, the right to use Field #2 for up to 300 hours of MYS's total yearly allocation. Marymount, in turn, was required to contribute up to one half the cost of the purchase and installation of the synthetic turf. Marymount uses the improved Field #2 for intercollegiate soccer and lacrosse matches and practices. During the hours not allocated to MYS or Marymount, Field #2 is available for advance reservation or "walk on" use by the general public.

In April 2003, the West Lewinsville Heights Citizens Association, and several nearby property owners (collectively, the residents), sent a letter by counsel to Jane W. Gwinn, Fairfax County Zoning Administrator (the Zoning Administrator), requesting a written opinion whether Marymount's proposed use of the Park required a special use permit or special exception under the Zoning Ordinance. The Zoning Administrator issued a decision stating that Marymount did not need a special use permit or special exception for the activities Marymount is allowed to conduct under the Agreement.

In May 2003, the residents appealed the Zoning Administrator's decision to the Board of Zoning Appeals of Fairfax County (the BZA). The residents argued that Marymount's proposed use of Field #2 would transform it into a "college

3

athletic facility," which would require a special exception under the Zoning Ordinance.

After a public hearing on September 16, 2003, the BZA unanimously voted to overturn the Zoning Administrator's decision. The BZA concluded that Marymount's use of the Park was not "exclusively for public purposes" and required a special exception for a college or university facility under Zoning Ordinance § 9-301(1).

On September 24, 2003, Kathleen A. Knoth, Deputy Clerk of the BZA, stated in a letter to counsel for the residents:

> At its September 16, 2003 meeting, the Board of Zoning Appeals took action to OVERTURN the determination of the Zoning Administrator for the above-referenced appeal application. The final decision date is September 24, 2003.

On October 24, 2003, the Board of Supervisors of Fairfax County, the Park Authority, and William E. Shoup, Gwinn's successor as Zoning Administrator (collectively, the County), filed a petition for a writ of certiorari in the circuit court seeking review of the BZA's decision. The County alleged that the BZA was plainly wrong and applied erroneous principles of law in overturning the Zoning Administrator's determination. The County asserted that the Park continues to be used "exclusively for public purposes" under the Agreement because the Park Authority continues to "own, operate, and regulate all of the activities of the public" at the Park.

4

The residents and the BZA opposed the County's petition for a writ of certiorari. The BZA also filed a plea in bar, arguing that the County's appeal should be dismissed because it was not filed within 30 days of the BZA's "final decision," as required by Code § 15.2-2314. The BZA argued that the "final decision," within the meaning of the statute, was the BZA's unanimous vote on September 16, 2003, overturning the Zoning Administrator's decision. The BZA argued that, therefore, the County's petition was filed eight days after expiration of the 30-day appeal period fixed by Code § 15.2-2314.

The circuit court denied the BZA's plea in bar, granted the County's petition for a writ of certiorari, and reversed the BZA's decision. The court concluded that the BZA's decision became final on September 24, 2003, as stated in Knoth's letter to counsel and pursuant to the BZA's by-laws. Thus, the court concluded that the County filed its petition within the 30-day time limit required by Code § 15.2-2314.

The circuit court further held that the BZA was plainly wrong and applied erroneous principles of law in concluding that Marymount's use of Field #2 changed the nature of the Park's public use and required a special exception under the Zoning Ordinance. The residents and the BZA (the residents) appeal from the circuit court's judgment.

5

The residents argue that the circuit court erred in denying the BZA's plea in bar, because the County's petition for a writ of certiorari was filed more than 30 days after the meeting at which the BZA voted to overturn the Zoning Administrator's decision. The residents assert that the BZA's vote was the "final decision" for purposes of the 30-day appeal period set forth in Code § 15.2-2314, because the statute no longer requires the BZA to "file" its decision with the office of the board before the BZA's decision becomes final.

In response, the County argues that the circuit court correctly held that the County's petition was timely filed, because Code § 15.2-2314 does not specify when a decision of a board of zoning appeals becomes final but only states that the 30-day appeal period begins to run from the date of the final decision. The County contends that the BZA may determine for itself when its decisions become final, and that the BZA has done so by enacting Article VII, paragraph 8, of its by-laws. The County asserts that its position is supported by the action of the BZA's own deputy clerk, who stated in writing to the parties that "[t]he final decision date is September 24, 2003," rather than the date of the BZA vote on September 16, 2003. We disagree with the County's arguments.

6

Established principles govern our interpretation of the statutory, ordinance, and by-law provisions relevant to this issue. These principles also direct the order of priority to be given the provisions of the different enacting bodies.

We employ the plain and natural meaning of the words contained in the enactments before us. Capelle v. Orange County, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005); Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002); Donovan v. Board of Zoning Appeals of Rockingham County, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996). However, when current and prior versions of a statute are at issue, there is a presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law. Virginia-American Water Co. v. Prince William County Serv. Auth., 246 Va. 509, 517, 436 S.E.2d 618, 622-23 (1993); Dale v. City of Newport News, 243 Va. 48, 51, 412 S.E.2d 701, 702 (1992). Further, we assume that the General Assembly's amendments to a statute are purposeful, rather than unnecessary. AAA Disposal Servs. v. Eckert, 267 Va. 442, 446, 593 S.E.2d 260, 263 (2004); Virginia-American Water Co., 246 Va. at 517, 436 S.E.2d at 623; Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 600, 331 S.E.2d 476, 479 (1985).

7

County and municipal ordinances must be consistent with the laws of the Commonwealth. Blanton v. Amelia County, 261 Va. 55, 63, 540 S.E.2d 869, 873-74 (2001); Klingbeil Mgmt. Group Co. v. Vito, 233 Va. 445, 449, 357 S.E.2d 200, 202 (1987); King v. County of Arlington, 195 Va. 1084, 1090, 81 S.E.2d 587, 591 (1954); see Code § 1-13.17. Such ordinances are inconsistent with state law when they cannot coexist with a statute. Blanton, 261 Va. at 64, 540 S.E.2d at 874; King, 195 Va. at 1091, 81 S.E.2d at 591.

The fact that a county or municipal ordinance enlarges on a statute's provisions does not create a conflict with the statute unless the statute limits the requirements for all cases to its own terms. Blanton, 261 Va. at 64, 540 S.E.2d at 874; Allen v. City of Norfolk, 196 Va. 177, 181, 83 S.E.2d 397, 400 (1954); King, 195 Va. at 1090, 81 S.E.2d at 591. Thus, if a statute and a local ordinance both can be given effect, courts must harmonize them and apply them together. Blanton, 261 Va. at 64, 540 S.E.2d at 874; Klingbeil, 233 Va. at 449, 357 S.E.2d at 202; King, 195 Va. at 1091, 81 S.E. at 591.

By-laws adopted by a board of zoning appeals must be "consistent with ordinances of the locality and general laws of the Commonwealth." Code § 15.2-2308; see also Code

§ 1-13.17.  Therefore, in examining the BZA by-law on which the County relies, we review any statutes and local ordinances that may affect the application of this by-law.

We consider the current and former versions of Code § 15.2-2314, the Zoning Ordinance, and the BZA by-laws. Code § 15.2-2314, which governs appeals from a decision of a board of zoning appeals, states in relevant part:

> Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any aggrieved taxpayer or any officer, department, board or bureau of the locality, may file with the clerk of the circuit court for the county or city a petition specifying the grounds on which aggrieved within 30 days after the final decision of the board.

Id.  Before 2001, however, the prior version of this statute stated that a petition must be filed "within [30] days after the filing of the decision in the office of the board."  Former Code § 15.2-2314 (1997).

Pursuant to Code § 15.2-2308, the BZA has enacted by-laws, which govern its internal operating procedures.  Article VII, paragraph 8 (the BZA by-law) states:

> Within five (5) days of the action of the Board, the Clerk shall prepare and provide to the applicant the Board's decision or final resolution setting forth the decision on the application.
>
> No decision shall be officially filed in the Office of the Board until the day following the next official meeting day of the Board, but not less than eight (8) days, whichever is the latter, unless the Board waives this requirement.  Within five (5) days of the action of the Board, the Clerk shall prepare and provide to

9

the applicant the Board's final resolution setting
forth the decision on the application.

Finally, Zoning Ordinance § 19-211 provides, in relevant part, that "[a]ll decisions and findings of the BZA shall be final decisions."

The BZA by-law complemented the pre-amendment text of Code § 15.2-2314. The former statute identified the date of a specific action, the filing of the BZA's decision in the office of its board, as the date from which the 30-day appeal period to the circuit court began to run. The BZA by-law, in turn, served to specify when a decision was "officially filed" in the office of the board, namely, at least eight days following the BZA's decision. Therefore, under those former provisions, the crucial date from which an appeal period was measured was not the actual date of the BZA's vote but the date that the recorded decision was filed in the office of the board.

In amending Code § 15.2-2314, the General Assembly changed the focal point for the commencement of the appeal period from the date the BZA's final decision was filed to the date of the final decision itself. This change was a substantive one, reflecting a legislative determination to achieve uniformity throughout the Commonwealth by measuring the appeal period from the actual final decision date, rather than from the different dates that various local boards had identified as their

10

"official filing date."  Therefore, we hold that the "official filing date" provisions of the BZA by-law are inconsistent with the present text of Code § 15.2-2314 and are no longer valid for determining when the appeal period begins to run from a final decision of the BZA.

Because Code § 15.2-2314 uniformly measures the 30-day appeal period from the date of the "final decision" of a board of zoning appeals, we must determine when the BZA reached its "final decision" in the present case.  The BZA's unanimous vote, taken on September 16, 2003, was the action deciding the merits of the residents' appeal from the Zoning Administrator's decision.  The vote taken on that date was not changed in any respect on a later date.

Under Zoning Ordinance § 19-211, quoted above, every BZA decision is a "final decision."  This provision plainly addresses only those decisions and findings that resolve the merits of an appeal or application before the BZA, or dismiss such filings with prejudice on a procedural basis.  The term "final decision" does not encompass other actions that may be taken regarding such appeals and applications that do not decide their merits or effect a dismissal of the case with prejudice. Therefore, we conclude that this ordinance section is consistent with the language of Code § 15.2-2314, and the two enactments may be harmonized and construed together as providing that a

11

"final decision" of the BZA is the decision that resolves the merits of the action pending before that body or effects a dismissal of the case with prejudice.

Here, the decision ultimately resolving the merits of the residents' appeal was the vote taken by the BZA on September 16, 2003. The BZA did not take any further action amending that decision. Therefore, the date of the BZA's "final decision," within the meaning of Code § 15.2-2314, was September 16, 2003, and the County was allowed 30 days from that date to file its petition for a writ of certiorari in the circuit court. Because the County's petition was not filed within this 30-day period, the petition was untimely.

Our decision is not altered by the fact that the letter to the parties from the BZA's clerk stated that the final decision date was September 24, 2003. The date of a "final decision" of a board of zoning appeals, as we have stated above, is determined by the nature of the action taken by that body, not by the mistaken representation of its deputy clerk applying a BZA by-law that is inconsistent with the governing statute.

Accordingly, we hold that the circuit court erred in denying the BZA's plea in bar. Further, because the County's petition to the circuit court was untimely, we are obliged to dismiss the County's appeal and are unable to reach the merits of the case considered by the circuit court.

12

For these reasons, we will reverse the circuit court's holding that the County's petition was timely, vacate the court's holdings on the merits of the case, and enter final judgment dismissing this appeal.

Reversed in part,
vacated in part,
and final judgment.