COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Petty
Argued at Salem, Virginia


JEFFREY HAIRSTON
                                                        OPINION BY
v.       Record No. 0686-06-3                   JUDGE WILLIAM G. PETTY
                                                         JUNE 19, 2007
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                            Charles J. Strauss, Judge

             Mark T. Williams (Williams, Morrison, Light and Moreau, on brief),
             for appellant.

             Eugene Murphy, Senior Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Jeffrey Hairston of five counts of indecent liberties with a person with

whom he had a custodial relationship in violation of Code § 18.2-370.1, and five counts of carnal

knowledge, in violation of Code § 18.2-63.  Hairston challenges his convictions, arguing that the

trial court erred when it quashed his subpoena *duces tecum* seeking the victim's counseling records

from Dr. Sue Bendewald and her employer, Whole Counsel Associates.  For the reasons stated

below, we disagree with Hairston, and affirm his convictions.

                                     I. BACKGROUND

        On appeal, we view the evidence in the light most favorable to the Commonwealth, the

party prevailing below, and grant to it all reasonable inferences fairly deducible from the evidence.

Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993).  So viewed, the

record shows that Hairston issued a subpoena *duces tecum* seeking the victim's counseling records

from Dr. Bendewald.  Specifically, Hairston requested "copies of all notes, including but not limited

to progress notes; copies of all therapy reports, copies of all evaluations and diagnosis; records of all statements made by [the victim]." The subpoena *duces tecum* was supported by an affidavit, and Hairston properly noticed the Commonwealth's attorney. The Commonwealth moved the trial court to quash the subpoena *duces tecum*.

At a hearing addressing the motion to quash, the Commonwealth's attorney explained that Dr. Bendewald had called him about the subpoena because "she was concerned that the subpoena did not comply with the HIPAA[1] requirements of giving notice to the victim and [giving the victim] an opportunity to move to quash" the subpoena *duces tecum*. The Commonwealth also argued that the subpoena *duces tecum* was a "fishing expedition" and was improper under our decision in Farish v. Commonwealth, 2 Va. App. 627, 346 S.E.2d 736 (1986). The trial court quashed the subpoena *duces tecum*. Following a jury trial, Hairston was convicted and sentenced to a total of forty years imprisonment. This appeal followed.

## II. ANALYSIS

We hold that the trial court correctly quashed the subpoena *duces tecum* because it did not comply with Code § 32.1-127.1:03, which governs the privacy of health records in Virginia.[2] We analyze the trial court's interpretation and application of a statute *de novo*. Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).

---

[1] HIPAA refers to a federal statute, the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq.* HIPAA does not govern the issuance of subpoenas under state law, but Virginia has enacted its own statute governing the privacy of health records. The Virginia Health Records Privacy Law, as discussed *infra*, specifically discusses the requirements for obtaining medical or counseling records pursuant to a subpoena *duces tecum* and was cited in the parties' briefs and at oral argument in this case.

[2] Because we affirm the trial court's decision on these grounds, we need not discuss whether the subpoena *duces tecum* properly sought relevant information.

A.  Application of Code § 32.1-127.1:03

In coming to this conclusion, we must initially determine whether Code § 32.1-127.1:03 pertains to the subpoena at issue before us.  The statute recognizes a patient's right of privacy in the content of his or her medical records.  Code § 32.1-127.1:03.  Subsection A of the statute states, "except when permitted or required by this section or by other provisions of state law, no health care entity, or other person working in a health care setting, may disclose the records of a patient."  Id. Subsection B of Code § 32.1-127.1:03 defines "health care entity" as, *inter alia*, a "health care provider."  In turn, "health care provider" is defined as one of "those entities listed in the definition of 'health care provider' in § 8.01-581.1."  Id.  The term "health care provider" as defined in Code § 8.01-581.1 includes clinical psychologists, clinical social workers, and professional counselors.

Subsection D carefully delineates under what circumstances a health care entity may release health records, including, as pertinent to this case, "[i]n compliance with a subpoena issued in accord with subsection H."  Code § 32.1-127.1:03(D).  Subsection H applies very broadly, stating that "*no* party . . . to a criminal . . . action or proceeding shall request the issuance of a subpoena *duces tecum* for another party's health records [or those of a nonparty witness] . . . " unless that party complies with the requirements of Subsection H.  Code § 32.1-127.1:03(H) (emphasis added).

We conclude that Code § 32.1-127.1:03 applies in this case.  Dr. Bendewald was employed by a counseling center, and the type of records sought from her related to her counseling sessions with the victim, a nonparty witness in this case.[3]  See Code § 32.1-127.1:03(B) (defining "health record" as "the substance of any communication made by an individual to a health care entity in confidence during or in connection with the provision of

---

[3] We also note that Hairston conceded at oral argument that Dr. Bendewald is a health care provider within the meaning of the statute.

health services . . ." and "psychotherapy notes" as "comments, recorded in any medium by a health care provider who is a mental health professional, documenting or analyzing the contents of conversation during [counseling]").  Thus, Code § 32.1-127.1:03 applies to the subpoena *duces tecum* in this case.

## B.  Hairston's Subpoena *Duces Tecum*

Next, we address whether Hairston met the statutory requirements for a subpoena *duces tecum* seeking medical or counseling records.  Our review of the record indicates that, instead of complying with the specific requirements of Code § 32.1-127.1:03, Hairston only complied with the general requirements of Rule 3A:12(b):  it was supported by an affidavit and it properly noticed the Commonwealth's attorney.[4]  However, when seeking medical or counseling records, counsel must comply with the applicable, specific privacy provisions of Code § 32.1-127.1:03, as well as the general requirements of Rule 3A:12(b).

This Court has never explicitly addressed whether subpoenas *duces tecum* must comply with Code § 32.1-127.1:03; however, the plain language of the statute requires that they do so. When interpreting a statute, we must "apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result."  Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006) (citations omitted).  We are also responsible to "'ascertain and give effect to the intention of the legislature'" which is "usually self-evident from the words used in the statute."  Id. at 227, 623 S.E.2d at 925-26 (quoting Chase v.

---

[4] Rule 3A:12(b) states:

> Upon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, the judge or the clerk may issue a subpoena *duces tecum* for the production of writings or objects described in the subpoena.

DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003)).  This statute is not ambiguous, and the application of its provisions will not lead to an absurd result.

On the contrary, Code § 32.1-127.1:03(H) clearly sets out specific conditions for the issuance of such a subpoena, including:  (1) providing a copy of the subpoena *duces tecum* to a nonparty witness; (2) providing a nonparty witness with a "Notice to Patient," informing the witness of his or her right to file a motion to quash with the clerk of court; and (3) providing the health care entity a "Notice to Providers," advising the entity that if it receives notice of a motion to quash or if it moves to quash, it must provide the records to the clerk of court in a sealed envelope.

The General Assembly clearly expressed its intent that "nonparty witnesses," like the victim in this case, be notified that their medical records are being sought in discovery, that they receive information concerning their right to move the trial court to quash the subpoena seeking those records, and that health care entities be instructed on how to protect their patients' privacy during a legal proceeding.  It is apparent from an examination of the subpoena *duces tecum* included in the record before us that Hairston made no attempt to meet the requirements of Code § 32.1-127.1:03(H).  The subpoena does not include any of the required notices, and the record reveals that Hairston did not notify the victim that he was seeking her counseling records, as required by the statute.  Based on these facts, we conclude that the trial court was correct in quashing the subpoena *duces tecum*.

### C.  Relationship between Rule 3A:12(b) and Code § 32.1-127.1:03

Finally, we address the relationship between Rule 3A:12(b) and Code § 32.1-127.1:03. Code § 8.01-3 empowers our Supreme Court to prescribe the rules of practice and procedure for the courts of this Commonwealth; however, it also provides, in pertinent part, that the General Assembly "may, from time to time, by the enactment of a general law, modify or annul any rules

adopted or amended pursuant to this section.  In the case of any variance between a rule and an enactment of the General Assembly such variance shall be construed so as to give effect to such enactment."  Code § 8.01-3(A), (D).  Further, our Supreme Court has determined that "there is no variance" between a rule and a statute when both "provisions seek to promote" the same policy.  Waterman v. Halverson, 261 Va. 203, 206-07, 540 S.E.2d 867, 868-69 (2001); cf. Capelle v. Orange County, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005) (noting the basic principle of statutory interpretation that when one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict, the more specific statute prevails).

Here, we determine that there is no conflict between Rule 3A:12(b) and Code § 32.1-127.1:03.  Like the provisions at issue in Waterman, these provisions both seek to promote the same policy:  here, the orderly issuance of subpoenas *duces tecum*.  Thus, we read the rule and the statute in harmony, and conclude that while the statute in no way "nullifie[s] or invalidate[s] any portion of the rule," Waterman, 261 Va. at 207, 540 S.E.2d at 869, the statute creates a specific procedure that parties seeking medical or counseling records must follow.  We therefore conclude that even when, as here, a subpoena *duces tecum* complies with Rule 3A:12(b) and follows the form of the sample subpoena *duces tecum* included in the appendix to the rules of court, it will not be sufficient to request medical or counseling records in light of Code § 32.1-127.1:03.

### III. CONCLUSION

For the reasons discussed in this opinion, the trial court correctly quashed the subpoena *duces tecum* seeking the victim's counseling records.  We affirm Hairston's convictions.

Affirmed.