PRESENT:  All the Justices

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY

v.  Record No. 230491

RITA M. LEACH-LEWIS, TRUSTEE OF THE
RITA M. LEACH-LEWIS TRUST 18MAR13

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
June 20, 2024

FROM THE COURT OF APPEALS OF VIRGINIA


The Court of Appeals of Virginia concluded that a provision of Fairfax County's zoning

ordinance required the Board of Zoning Appeals ("BZA") to consider whether the search of a

residence, conducted by a zoning official who was investigating a zoning violation, complied

with the Fourth Amendment.  The proceeding at issue, a review of a notice of violation of a

zoning ordinance, was a civil proceeding.  The County challenges this decision.  It argues that

the BZA was not required to examine the constitutionality of the search underlying the notice of

violation.  We agree with the County.  We further conclude that the residences in question were

being used as an "office" as that term is defined in the zoning ordinance.  Accordingly, we

reverse the judgment of the Court of Appeals.

                                    BACKGROUND

The New World Church of the Christ (the "Church") is a non-profit religious

organization.  Rita M. Leach-Lewis ("Leach-Lewis") is described in the record as the Reverend,

Matriarch, and President of the Church.  The Rita M. Leach-Lewis Trust, for which Leach-Lewis

serves as trustee, owns a number of homes in Fairfax County (the "Houses").  Members of the

Church, including Leach-Lewis, reside in the Houses.  Leach-Lewis and the persons who live

and work in the Houses receive a stipend for their work.  Church members work from the Houses

to handle correspondence, prepare spiritual teachings, and store files and boxes. A significant portion of one of the Houses is configured for office space, with desks, computers, and telephones. Signs had been installed in this home that are consistent with office use, including one sign that is posted above a room that is labeled "office." The Houses are located in an area that is zoned "Residential-Conservation," a zoning designation which prohibits office uses.

The Fairfax Police Department alerted zoning officials that there may be zoning violations at the Houses. An investigator with the Department of Code Compliance, John Enos, arrived at one of the Houses while the Police Department was there executing a search warrant for an unrelated matter. When Enos arrived, the police were "generally done" but they were still present.

Enos and Leach-Lewis provided differing accounts about whether Leach-Lewis gave Enos consent to search. Enos testified that he was greeted at the entrance by "a lady" he believed was a member of the Church. This lady informed Enos that Leach-Lewis was in the back sunroom, and she offered to bring him there. According to Enos, Leach-Lewis then gave him consent to walk around the home. Leach-Lewis, however, testified that she did not grant Enos consent to search.

Based on Enos's findings, the zoning administrator for Fairfax County issued a notice of violation of the zoning ordinance. Specifically, the zoning administrator concluded that a home in a residential conservation district was being used as an "office" in violation of the zoning ordinance. The notice of violation stated that the violation should be cleared within thirty days of the notice, either by discontinuing the office use on the property, removing "all related supplies, materials, and equipment associated with this use," and "[r]estoring the property to the

2

principal use of a residential dwelling," or by obtaining a special exception from the Board of Supervisors.[1]

Leach-Lewis, as trustee, appealed the notice of violation to the BZA.  She argued that the residence at issue was not being used as an "office" because, properly understood, the term "office" as defined in the zoning ordinance does not apply to a nonprofit organization engaged in spiritual pursuits.  She further argued that the notice of violation was based on an improper search under the Fourth Amendment and that "the fruit of [the] unlawful search cannot be used to support" the notice of violation.  Leach-Lewis pointed to Fairfax County Zoning Ordinance § 18-901(4), which provides in relevant part that "[n]othing in this Ordinance may be construed to authorize an unconstitutional inspection or search.  All searches or inspections authorized by this Ordinance require a warrant, court order, consent, or another exception to the warrant requirement."  After hearing argument and testimony, the BZA upheld the action of the zoning administrator.  The BZA did not address the propriety of the search.

Leach-Lewis next filed a petition for a writ of certiorari challenging the decision of the Board of Zoning Appeals.  She advanced the same arguments in the circuit court that she had made before the BZA.  The circuit court heard additional testimony and upheld the decision of the BZA.  The circuit court held that the property was being used as an office in violation of the zoning ordinance and that even if the BZA could adjudicate the constitutional issue of whether the search was proper, it was not required to do so.

Leach-Lewis appealed to the Court of Appeals.  A panel of that court reversed the judgment of the circuit court in an unpublished memorandum opinion.  *Leach-Lewis v. Board of*

---

[1] The notice of violation also detailed the violation of a separate part of the zoning ordinance which governed the height of storage sheds.  That separate violation is not at issue in this appeal.

*Supvsrs. of Fairfax Cnty.*, 2023 Va. App. LEXIS 392 (2023).  The Court of Appeals held that the

BZA "had a duty to interpret and apply" § 18-901(4) of the zoning ordinance.  *Id.* at 6.  The

Court of Appeals directed the circuit court to remand the case to the BZA to determine whether

the zoning ordinance was violated by the search of the church's property.  *Id.* at 13.  The Court

of Appeals declined to reach the question of whether the activities of the Church satisfy the

definition of an "office" under the zoning ordinance.  *Id.* at 6.

We granted the Board of Supervisors an appeal from this decision.

ANALYSIS

The issues before us are legal issues, namely, whether the BZA should have considered

§ 18-901(4) of the zoning ordinance in evaluating Leach-Lewis's appeal from the notice of

violation and whether the Church's use of residential homes qualifies as an "office" under the

zoning ordinance.  We review questions of law de novo.  *See Miller & Rhoads Building, L.L.C.*

*v. City of Richmond*, 292 Va. 537, 541 (2016) (citing *Renkey v. County Bd. of Arlington*, 272 Va.

369, 373 (2006)).

I.    THE ZONING ORDINANCE DOES NOT REQUIRE THE EXCLUSION OF EVIDENCE OR THE
      TERMINATION OF A PROCEEDING EVEN IF EVIDENCE IS ILLEGALLY OBTAINED.

The first part of § 18-901(4) of the zoning ordinance specifies certain avenues for zoning

officials to remedy zoning violations.  It provides in relevant part:

> In addition to the remedies provided in Par. 3 above, the Zoning
> Administrator or her agent may seek the issuance of an inspection
> warrant, initiate injunction, mandamus, or any other appropriate
> action to prevent, enjoin, abate or remove such erection or use in
> violation of any provision in this Ordinance.  Such action may also
> be instituted by any citizen who may be aggrieved or particularly
> damaged by any violation of any provisions of this Ordinance.

The ordinance then adds a caveat, that "[n]othing in this Ordinance may be construed to

authorize an unconstitutional inspection or search."  *Id.*  It then states that "[a]ll searches or

4

inspections authorized by this Ordinance require a warrant, court order, consent, or another exception to the warrant requirement." *Id.* The apparent purpose of this provision is to insulate the County from liability under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a local government can be held liable for the unconstitutional actions of its employees if those actions were based on governmental custom or, alternatively, official policy as reflected in ordinances, regulations, or policy statements). The text of § 18-901(4) does not provide that a zoning case cannot proceed if evidence is unconstitutionally seized, and it does not contain a rule calling for exclusion of evidence.[2]

II.    THE FOURTH AMENDMENT DOES NOT REQUIRE THE EXCLUSION OF EVIDENCE IN A CIVIL CASE INVOLVING A NOTICE OF A ZONING VIOLATION.

The Fourth Amendment applies of its own force to all government searches, regardless of whether it is incorporated by reference in a statute or ordinance. Under settled law, the exclusionary rule, which applies in criminal cases, does not apply in civil cases. *County of Henrico v. Ehlers*, 237 Va. 594, 603-04 (1989). *See also Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364 n.4 (1998) ("[W]e have generally held the exclusionary rule to apply only in criminal trials. We have, moreover, significantly limited its application even in that context."); *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032 (1984) (plurality opinion) (exclusionary rule does not apply to deportation proceedings).

Although the United States Supreme Court has applied the exclusionary rule to civil asset forfeitures, *see One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700 & n.7 (1965), there are important distinctions between such cases and a case like this one involving the notice of a zoning violation. As the United States Supreme Court observed, "a forfeiture proceeding is

---

[2] We express no opinion concerning whether, under Dillon's Rule, a locality could fashion an exclusionary rule governing searches and seizures in the zoning context.

quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *Id.* at 700. Moreover, as the Supreme Court noted, "[i]t would be anomalous indeed . . . to hold that[,] in the criminal proceeding[,] the illegally seized evidence is excludable, while[,] in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *Id.* at 701.

Leach-Lewis observes that a zoning case could in time lead to a criminal prosecution and, therefore, application of the exclusionary rule is warranted. The simple answer to that argument is that if the County does prosecute a zoning case as a criminal violation, then the exclusionary rule would come into play. Here, however, we are dealing with a notice of violation of a zoning ordinance, not a criminal prosecution. As noted above, in the absence of a criminal prosecution, the exclusionary rule does not apply.

Although the zoning violation here is hardly catastrophic, we observe that extending the exclusionary rule to the civil and administrative context could, in many applications, have a significant damaging impact on the health and safety of a community or on the persons who work in a particular establishment. For example, an administrative agency might conduct a search to determine whether a company was releasing toxic chemicals into the air or water, or it might be investigating unsafe labor practices that endanger the health and safety of workers.

Finally, we note that a person who suffers from an illegal search that leads to a civil enforcement action is not without a remedy, even if that remedy is not the exclusion of evidence. Depending on the circumstances, tort law may provide a remedy, such as an action for trespass. In addition, 42 U.S.C. § 1983 affords an individual the right to sue government employees for constitutional violations. Under settled precedent from the United States Supreme Court, however, which we are bound to follow, the exclusionary rule does not apply to this zoning case.

6

### III. THE BZA WAS NOT REQUIRED TO CONSIDER § 18-901(4), BECAUSE THAT PORTION OF THE ZONING ORDINANCE HAD NO APPLICATION TO THE PROCEEDING BEFORE IT.

The Court of Appeals reasoned that Code § 15.2-2309(1) requires a BZA to "consider any applicable ordinances, laws, and regulations" in evaluating Leach-Lewis's challenge to the notice of violation and, because § 18-901(4) is part of the zoning ordinance, the BZA should have considered it. *Leach-Lewis*, 2023 Va. App. LEXIS 392 *9. The key word from Code § 15.2-2309(1) is "applicable" ordinances. The BZA was not required to consider § 18-901(4) of the zoning ordinance because it had no applicability to whether Leach-Lewis's property was illegally being used as an office. Under the plain language of § 18-901(4), and under settled caselaw interpreting the Fourth Amendment, § 18-901(4) does not compel exclusion of evidence and does not foreclose enforcement of a civil zoning action. Therefore, consideration by the BZA of § 18-901(4) would not have halted the proceeding or resulted in the exclusion of evidence even if (a point we do not resolve) the evidence was seized in contravention of the Fourth Amendment. In effect, under the Court of Appeals' holding, the BZA – an entity for which members are not required to have any legal training and which is generally not composed of lawyers, *see* Code § 15.2-2308 (BZA members are residents appointed by the circuit court) – would be asked to issue an advisory opinion concerning the legality of a search under the Fourth Amendment. Neither state nor local law requires such an exercise.

The question before the BZA was whether the house in question was illegally being used as an office. Whether evidence was seized in contravention of the Fourth Amendment is not a consideration that is applicable to that determination. Accordingly, the Court of Appeals erred in reversing the judgment of the circuit court and in remanding for the BZA to hear evidence concerning the propriety of the search under the Fourth Amendment.

7

IV. THE EVIDENCE ESTABLISHES THAT THE CHURCH USED THE HOUSES IN QUESTION AS AN "OFFICE" UNDER THE FAIRFAX ZONING ORDINANCE.

In the alternative, Leach-Lewis argues that the Houses do not constitute an "office" under the zoning ordinance. Leach-Lewis contends that the Church's activities, which are spiritual in nature, are not a "business" within the language of the ordinance. Leach-Lewis invokes canons of construction known by their Latin expressions, "*ejusdem generis*" and "*noscitur a sociis*."

At the time, Fairfax County Zoning Ordinance § 20-300 defined an "office" as follows:

> Any room, studio, clinic, suite or building wherein the primary use is the conduct of a business such as accounting, correspondence, research, editing, administration or analysis; or the conduct of a business by salesmen, sales representatives or manufacturer's representatives; or the conduct of a business by professionals such as engineers, architects, land surveyors, artists, musicians, lawyers, accountants, real estate brokers, insurance agents, certified massage therapists in accordance with Chapter 28.1 of The Code, dentists or physicians, urban planners and landscape architects.
>
> In addition, any use shall be deemed an office use which: (a) involves the administration and conduct of investigation, examination or experimentation, but which does not include the operation of laboratory facilities, pilot plants, prototype production, or the assembly, integration, testing, manufacture or production of goods arid products on site; or (b) involves prototype production limited to computer software development, demographic and market research, technical or academic consulting services, and data processing facilities. Office shall not involve manufacturing, fabrication, production, processing, assembling, cleaning, testing, repair or storage of materials, goods and products; or the sale and/or delivery of any materials, goods or products which are physically located on the premises. An office shall not be deemed to include a veterinary clinic.

"When construing a zoning ordinance and its undefined terms, we give such terms their 'plain and natural meaning.'" *Adams Outdoor Adver., L.P. v. Bd. of Zoning Appeals*, 274 Va. 189, 196 (2007) (quoting *Capelle v. Orange County*, 269 Va. 60, 65 (2005)). We also afford

8

"great weight" to the interpretation given to a zoning ordinance by the officials charged with its administration. *Id.*

The *ejusdem generis* canon translates as "of the same class or nature." This canon of construction can lead a court to conclude that "when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words." *Norton v. Board of Supervisors of Fairfax Cnty.*, 299 Va. 749, 759 (2021) (quoting *Martin v. Commonwealth*, 224 Va. 298, 301-02 (1982)). That canon of construction does not apply here because the ordinance provides a general term followed by illustrative ("such as") examples. *Tomlin v. Commonwealth*, 302 Va. 356, 367-68 (2023).

*Noscitur a sociis* translates as "it is known by its associates." Under the *noscitur a sociis* canon of construction, "when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words." *Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 724 (2019) (quoting *Martin*, 224 Va. at 301-02). This canon of construction is also unhelpful here, because, again, the ordinance employs a plain language term followed by illustrative examples, as opposed to a grouping of general and specific words.

The words employed by the zoning ordinance have a plain language meaning. The word "business" is commonly understood to be both "[a] commercial enterprise carried on for profit" and "a particular occupation or employment habitually engaged in for livelihood or gain." BLACK'S LAW DICTIONARY 247 (11th ed. 2019). The evidence, including from Church leadership, established that Church members earned their livelihood through their work for the Church and that they performed their work at least in substantial part in the Houses in question.

9

The ordinance does not employ the term "for profit" in characterizing a business and it contains no exception for spiritual endeavors. The ordinance also uses the word "such as" to illustrate some of the activities that typically are conducted in an "office." The ordinance specifically lists "correspondence, research, and editing" as examples of activities that fall within the definition of an "office" use. The Church admitted it was doing all of these things at these Houses. The evidence plainly established that the Houses, which were situated in an area that is zoned residential, were being used as offices within the ordinary meaning of the word. Consequently, we reject Leach-Lewis's argument that the use of the Houses did not fall within the definition of an "office" as that term is defined by the zoning ordinance.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and final judgment is entered in favor of the Board of Supervisors of Fairfax County.

*Reversed and final judgment.*